OLLIE IRVINE, Appellant, v. ARMISTED ROSS ET AL.—98 S. W. (2d) 763.

Division One, November 12, 1936.

*James & James, Ford R. Nelson* and *Bowersock, Fizzell & Rhodes* for appellant.

*Harvey & Bellamy, Lashly, Lashly & Miller* and *George F. Wise* for respondents.

FERGUSON, C.—This is a suit to determine title to certain land in Saline County. The land was owned in fee, by C. C. Ross who died, testate, in 1895. Some two or three weeks prior to his death Ross executed his last will and testament. At the time he executed this will he was past the age of seventy years, a widower, and had but one child, a daughter, Hallie R. L. Ross. There were no other descendants. The daughter Hallie had never married. Ross had brothers and sisters who were, or had been, married and had children. The age of the daughter, Hallie, at the time her father executed the will, and at the time of his death within some two or three weeks thereafter, does not appear; the inference however is that she was of full age at the time. In 1911, sixteen years after her father's death, Hallie married the plaintiff herein, Ollie Irvine. This was her only marriage. No child was born of the marriage and she died, in 1930, nineteen years thereafter, testate, without ever having had issue. By her last will she devised and bequeathed all her "property and estate of every kind and character" to her husband, the plaintiff herein. He now claims title, in fee, to the

land described in the petition through, and by virtue of, the will of his deceased wife, who it is claimed derived title thereto through and under the will of her father. The defendants are the descendants of the brothers and sisters of the testator C. C. Ross and claim that under the will of Ross the title to the land vested in them in fee, upon the death of Hallie R. L. (Ross) Irvine "without leaving issue of her body living." The cause was tried in the Circuit Court of Saline County and the decree and judgment of the trial court was; that plaintiff was "not the owner of, nor has he any right, title or interest in and to the real estate described in his petition . . . but that the defendants are the owners in fee of said real estate." Plaintiff has appealed therefrom.

It is apparent that a construction of the will of C. C. Ross is involved, which necessitates the setting out of the will in such way that the full scope, tenor and objectives thereof may be considered. Paragraph 1 contains the conventional preliminary statements. By paragraph 2, the testator appoints his "brother-in-law, B. F. McDaniel . . . sole executor." Paragraph 3, is as follows: "I further give, bequeath and devise unto my said Executor, B. F. McDaniel, all and singular my money, goods and chattels, and property, real, personal and mixed of whatever character and wheresoever situate, in trust however for the several uses and purposes hereinafter set out and for no other." Paragraph 4, directs the executor; "to sell all . . . my personal property of every character . . . as soon as reasonably convenient after my death and from the proceeds pay all of my just and lawful debts and the expense of administration and lend out the remainder of the money upon such loans as he may deem safest . . . and keep it so loaned out until my daughter, Hallie R. L. Ross, shall marry upon which event the principal and interest shall be paid over to her and thereupon become her own absolutely; and in case of her death without having married then the principal and interest shall by my Executor be distributed among those who would, had I died intestate, have been my heirs at law, the same as is provided hereinafter (see paragraph 6; infra) for the distribution of the proceeds arising from the sale of my real estate." By the fifth paragraph the testator observes and directs: "Realizing that my daughter cannot with prudence, safety and propriety, either live upon or operate my real estate so long as she shall remain unmarried and that she ought not to undertake it, and in order to set my mind completely at rest upon this subject, and to settle it definitely and permanently, I hereby direct my said Executor, that so long as my said daughter shall remain single and unmarried he shall rent, or lease all of my real estate from year to year." This is followed by directions concerning the leasing of the real estate. The fifth paragraph then specifies: "from the rentals

of my real estate my Executor shall pay: (1) all taxes upon my estate;" (2) insurance upon "the dwelling houses and such other buildings as he may think proper to insure;" (3) "repairs . . . upon the premises;" (4) "to himself for his services herein and in aid of my said daughter in whatever he may be able to do for her and her interest, the sum of $350 a year;" (5) "to my sister Mrs. Nancy Blunt . . . and my sister Mrs. Ellen Bobbitt, . . . each during her natural life, the sum of $75 a year whenever the net rents from my real estate shall amount to $1750; but if the net rents should be less than $1750 and more than $1600 for any year then the excess over $1600 shall be equally divided between my said two sisters; and for any years the rents shall be only $1600 or less, then my said sisters shall take nothing for such years;" the annuities to "terminate upon the death of my said sisters respectively;" and (6) "to my daughter, Hallie R. L. Ross whatever balance shall remain of said rentals after satisfying clauses 1, 2, 3, 4 and 5 as above set out, to whom I hereby give and bequeath the same absolutely." We quote paragraph 6, the hub of this controversy, in full: "I further direct my said Executor that upon the marriage of my said daughter he shall convey all of my real estate, by good and sufficient deeds of conveyance, unto my said daughter, Hallie R. L. Ross, for and during the period of her natural lifetime and after her death to the heirs that is the issue of her body, or their descendants, in equal parts, but should she die without leaving such issue of her body, or their descendants, living, then to the heirs of this testator; subject however, to the payment of the annuities to my said two sisters the same as if said real estate still remained vested in my said Executor. But should my said daughter die without having married, then my Executor shall sell all of my real estate and distribute the proceeds among those, who had I died intestate would have been my heirs at law under the statutes of the State of Missouri concerning Descents and Distributions of the Estate of intestate deceased persons and in the manner and proportion designated by such statute, meaning and intending hereby such statute as may be in force at the death of my said daughter." By the seventh, and last, paragraph, testator expresses an "earnest desire and wish that my said daughter shall, so long as she remain unmarried, find a home for herself in some good and highly respected family;" that "her associations and social surroundings be of the best character;" and requests his executor "to aid and advise her" in doing so and to "counsel her concerning her personal welfare and business interests."

Having set out the provisions of the will at some length, and portions thereof *verbatim*, we now undertake to abstract the dispositive clauses. All the property is devised and bequeathed to the executor, as a trustee, in trust for the purposes stated. Upon the death of

the testator title vested in the executor as such trustee. He was to convert all the personal property into money, pay testator's debts and keep the remainder loaned at interest until such time as the daughter Hallie married "upon which event the principal and interest" was to "be paid over to her" and become her absolute property. Until the daughter Hallie married the real estate was to be leased and the net rentals after payment of taxes, repairs, fees and annuities, as provided, were to be paid to her. If the daughter, Hallie, died "without having married" the executor, as trustee, was to sell all the real estate and distribute the proceeds thereof and the proceeds derived from the sale of the personal property, principal and interest, among those who would have been the testator's heirs had he died intestate immediately after the death of his daughter. If the daughter married the executor was thereupon to convey all the real estate by deed to her "for and during the period of her natural life" with remainder to "the issue of her body, or their descendants, in equal parts," surviving her but if she died "without leaving such issue of her body, or their descendants, living, then to the heirs of this testator." The words "the heirs of this testator" give rise to this controversy. As first noted, long after her father's death, the daughter, Hallie, married plaintiff, which was her only marriage; no child was born of the marriage; and she died in 1930, testate, "without leaving issue of her body, or their descendants, living."

Plaintiff's theory is that the sixth paragraph of the will of C. C. Ross, relating to the disposition of the real estate, evidences the intent of the father that, in the event of her marriage, the daughter "should have only a life estate in possession" in the real property and "not the absolute control of the fee during her lifetime" so that she could not "defeat the intended estate in her issue, if she should have issue" or "the right of the testator's sisters to the payment of their annuities," but that the testator intended the words, "heirs of this testator" as used in this paragraph, in the strict legal sense and his "heirs" under this provision of the will therefore must be determined as of the time of his death and the daughter, Hallie, being the sole heir at that time took the fee in remainder, subject to the birth to her of a child or children and the survival of lineal descendants, and that she could devise and dispose of same at her death if she left no issue or lineal descendants surviving her. With this construction plaintiff took the fee under the will of his deceased wife. Plaintiff (appellant) further says: "The determination of the meaning of 'heirs' (in the above provision) is the real problem involved."

The word "heir," when used without qualification or modification, "is a technical word denoting the person on whom the law casts the inheritance on the ancestor's death." [Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947.] When so used in a will, that

is without anything therein modifying the technical meaning, the word "heir" will be taken to mean the person who would have taken the real estate of the testator as of the time of, and immediately upon, his death if he had died intestate. In the construction of the will herein involved plaintiff would segregate that part of Section 6 relating to the conveyance and disposition of the real property in the event of the daughter's marriage from the other parts of the will, treat it as standing alone, and make the construction upon that part of the will "to itself." In doing so the argument is made that the word "heirs" as used in the alternate disposition of the remainder in fee is not modified, explained or qualified and must therefore be taken in its strict legal sense and meaning. This in keeping with the general rule that "words with a well-known technical meaning should be construed according to their technical meaning unless a contrary meaning clearly appears from the context of the will." [Gardner v. Vanlandingham, supra.] Plaintiff's theory rests also upon the general holding that, "in the absence of a clear contrary indication, those who compose a class described in a will as the testator's heirs, to whom a remainder or executory interest is given, are to be ascertained at the death of the testator." [Gardner v. Vanlandingham, supra, and authorities there cited.] Thus, segregating that part of paragraph 6 of the will relating to the conveyance and disposition of the real estate, in the event of the daughter's marriage, from the other parts of the will plaintiff says his deceased wife was the sole heir of her father C. C. Ross as determined at the time of his death and therefore the sole member of the class designated as "heirs of the testator" in the alternate disposition of the remainder in fee. But in determining the meaning of the word "heirs" as thus used at this point we are not warranted in confining our examination to this part of the will alone apart from and disregarding the objective, purport and scheme of the will as a whole or an entirety. In the construction or interpretation of wills the courts are admonished (Sec. 567, R. S. 1929), and endeavor, to ascertain and give effect "to the . . . true intent and meaning of the testator." Such is the primary rule of construction. In aid thereof certain auxiliary rules have been found helpful. We here mention some of these, which seem particularly applicable in the instant case; (1) that "the construction must not be on this or that part of the instrument to itself, but must be on the entire instrument," that is, "the instrument must be viewed as a whole;" (2) "the object to be subserved and the circumstances surrounding the testator are to be kept in view;" and (3) "the words used are to be understood in the sense indicated by the whole instrument." [Eckle v. Ryland, 256 Mo. 424, 165 S. W. 1035; Feller v. Lee, 225 Mo. 319, 124 S. W. 1129; Chew v. Keller, 100 Mo. 362, 13 S. W. 395; Armor v. Frey, 226 Mo. 646, 126 S. W. 483.]

698

■ Applying the foregoing rules, viewing the instrument as a whole, keeping in mind the object to be subserved and the circumstances surrounding the testator and taking the words used in the sense indicated by the whole instrument, if it clearly appears from the context of the will as a whole that the testator intended the word "heirs," as thus used in the alternate disposition of the remainder in fee, in a sense other than its strict and technical meaning it must be given a construction conforming to that intent. The intent of the testator clearly appearing upon the instrument as a whole the technical meaning of the word must yield thereto. We have pointed out that at the time he executed the will Ross was a man of advanced age, a widower with one child, Hallie, a single woman; his other children had died in infancy. Ross died within a few weeks, less than a month, after the execution of the will and the general purport of the will considered it seems a reasonable inference that it was executed in contemplation of the near approach of death. The daughter Hallie was his sole and only heir apparent at the time. He had brothers and sisters living at the time and they had children. All his property is devised and bequeathed in trust; the trustee is to hold title to and care for and manage it so long as the daughter remains single and unmarried and the net proceeds therefrom, after payment of expenses, upkeep and the annuities to the two sisters mentioned, were to be paid to the daughter as her absolute property. If the daughter died "without having married" the trustee was to sell the real estate and pay the proceeds thereof, together with the proceeds in his hands derived from the sale of the personal property, to testator's heirs as determined at the time of his daughter's death, that is, those who would have been his heirs had he died immediately after the death of his daughter. That designation and intention as to who shall constitute his heirs in the event his daughter died "without having married" is clearly stated. If the daughter married thereupon the trustee was directed to convey the real estate, by deed, to her "for the period of her natural life," that is convey to her a life estate only, with remainder in fee "to the issue of her body, or their descendants in equal parts but should she die without leaving such issue of her body or their descendants living then to the heirs of this testator." Testator specifically and clearly provides for any lineal descendants surviving his daughter but in the event of her marriage and death without any lineal descendants surviving her he directs that the real estate go to his heirs. We think it was contemplated and intended by the testator that in such event, the marriage and death of his daughter without any lineal descendants surviving her, that his heirs to whom the remainder in fee should go should be determined as of the time of the death of his daughter as expressly provided and stated should be done in the event she died "without having married" and that he intended to use the word "heirs" in that sense is "indicated by

the whole instrument." Testator expressly states who are to be his heirs, as that word is used in his will, and enjoy the beneficial interest in all of his property in the event his daughter dies "without having married." The daughter is not expressly given the power of appointment, alienation or disposition, by deed, will or otherwise of the fee in any event or under any condition. If she marries a life estate is conveyed to her. If she marries and dies leaving issue of her body or their descendants surviving her the fee goes to such issue or their descendants, who take under testator's will, but if having married she dies without lineal descendants surviving her we think, the whole scheme and apparent purpose of the will considered, it clearly appears that testator intended the fee should go to those of his own blood, his heirs, to be determined as of the time of his daughter's death and that by "heirs of this testator," in such contingency, he intended to use the word "heirs" in the sense and with the meaning in which he used it in other parts of his will, that is, in the two other places where he speaks of his heirs.

Upon an examination of the will as an entirety, and the plan and objective thereof as a whole, it is our conclusion that it clearly appears that testator did not intend to limit or narrow the word heirs as used in the alternate disposition of the remainder in fee to its strict or technical meaning but that thereby he intended to designate the persons answering that description at the time of his daughter's death, in the event she died without leaving lineal descendants surviving her, and not at the time of his own death. [Johnson v. Askey, 190 Ill. 58, 60 N. E. 76; Heard v. Read, 169 Mass. 216, 47 N. E. 778; In re Bishop's Estate, 215 N. Y. Supp. 237.]

Both appellants and respondents cite cases involving the construction of wills. We deem it unnecessary to review and discuss these cases and it suffices to say they announce and seek to apply the well settled rules of construction to the peculiar and particular language of the will involved and the conditions existing at the time of its execution, as we have endeavored to do in this instance. This court has said: "It is rare that you find two wills using the same language, and the testator surrounded by the same conditions" (Armour v. Frey, supra), and "each case (involving construction of a will) presents some difference in language and circumstances" (Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644). It follows, because of the difference in facts and language used, that rarely does the decision in one such case point clearly to the proper construction of the will involved in a subsequent case so that "to some extent, each case must be considered apart from any other case." [Gardner v. Vanlandingham, supra.] These observations apply to Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644, upon which appellant relies. In that case the circumstances and the context of the will as a whole did not indicate an intention on the part of the testator to use the word "heirs"

in any other than its technical sense or meaning and we so held. Further it was pointed out, in that case, that the language used manifested a clear intent that the remainder vest at the death of testator and that the heirs, to whom the remainder was given, the word "heirs" being construed in its strict, legal meaning, were determinable as of that time.

We are of the opinion that the trial court correctly construed the will herein involved and that its judgment should be affirmed. It is so ordered. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.