Ralph L. EPLEY, Donald W. Epley, Hazel Rose McCloud, Nelda Edstron, and Irene Littleton, Respondents,

v.

Eleanor EPLEY, Appellant.

No. WD 30155.

Missouri Court of Appeals, Western District.

July 31, 1979.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

The issue is whether an October 19, 1957 quit-claim deed given by four children of a testator to testator's grandson, to whom there was previously devised 100 acres of land in fee tail, was effective to convey the future interests in reversion of the four grantors upon death of the devisee without heirs of his body. The trial court held the quit-claim deed to be ineffective; that the heirs of the testator could not be determined until the death of the life tenant on April 22, 1976; that respondents (the surviving children of one of testator's children, Chester C. Epley), together owned an undivided one-third interest in the property, and appellant, the widow of the life tenant, owned an undivided two-thirds interest in the property, apparently derived from the October 19, 1957 quit-claim deed of two of testator's heirs who did not contest the suit (apparently resting content), and who were found to have no interest in the property.

The factual sequence is this: J. J. Epley died April 4, 1955, and by his will, duly admitted to probate in Bates County, Missouri, he devised to grandson, Glen Epley, the land in question by Article V of the will "for and during his natural life and at his death to go to the heirs of his body but should my said grandson go without leaving bodily heirs, then said real estate shall revert to my heirs at law."

At the time of death, J. J. Epley was survived by four children: Ray T. Epley, Chester C. Epley, Richard W. Epley and Nettie Black. There was another son, Cleve Epley, who died in 1937, and who was the father of Glen Epley, his only child, who also survived J. J. Epley in 1955.

The quit-claim deed in question was executed to Glen Epley and Eleanor P. Epley, his wife, with full rights of survivorship, by Ray T. Epley, single; by Chester C. Epley and Crystenia C. Epley, his wife; Nettie Black and Jesse Black, her husband; and

David M. Swiss, Kansas City (Mann, Pink & Swiss, Kansas City, of counsel), for appellant.

James E. Thompson, Jr., Harrisonville (Crouch, Crouch, Spangler & Douglas, Harrisonville, of counsel), for respondents.

Richard W. Epley, a single man. Ray T. Epley died April 19, 1966, single and not survived by any children, natural or adopted, nor by father or mother.

Chester C. Epley died October 24, 1973, survived by five children who are the respondents herein. Their claimed interest turns upon whether Chester C. Epley's 1957 quit-claim deed was effective to foreclose their interests, the dispositive issue in this case. Respondents attach great significance to testator's use of the words "*then* said real estate shall revert to my heirs at law" (italics added) as showing his intent that the remaindermen should be determined as of the date of death of the life tenant without bodily heirs.

Glen Epley died October 22, 1976, without heirs of his body, not being survived by children, naturally born or adopted, but he was survived by his spouse, the appellant. Richard W. Epley and Nettie Black (two of J. J. Epley's heirs) both survived Glen and were named as defendants in this case. They, however, filed no answer or other pleading, and were held to be in default by the trial court.

Respondents cite and rely upon *Tevis v. Tevis*, 259 Mo. 19, 167 S.W. 1003 (1914). There, as a part of his will, testator made this provision: " 'Upon the death of my son John Tevis, my son Nestor C. Tevis, or his heirs shall have the right to purchase said undivided half of the aforesaid land for the sum of twenty-four hundred ($2,400.00) dollars, which sum of money or in case said Nestor C. Tevis or his heirs shall elect not to purchase the land, then said undivided half interest shall vest in the heirs of the body of said John Tevis, and if there shall be no heirs of his body then living, the money or the undivided interest in the land shall pass to and vest in my heirs at law.' " There was one daughter of testator, Anna McCrosky, who died testate in 1899, without children surviving her, making her husband the sole beneficiary under her will. John Tevis died in 1910, after his sister, Anna, and without leaving heirs of his body. The issue was whether Anna McCrosky had a vested interest which she could devise, or

only a contingent interest—the chance of having a share of the happening of the contingency that John Tevis died without heirs of his body. The court said, page 1008, "We can make nothing out of it except that the heirs at law had the mere chance of having on the happening of the mentioned contingency. The persons who were to take on that contingency could not be determined until John's death without heirs of his body. Such interest was therefore a contingent interest and not devisable prior to the death of John, and we so hold. * * * It follows that, Anna McCrosky having died prior to the event determining the takers and leaving no children surviving her, she took nothing; hence Bledsoe, her husband, took nothing under her will." Cited in *Tevis* is *Eckle v. Ryland*, 256 Mo. 424, 165 S.W. 1035 (1914), in which the question was whether a remainderman must survive the life tenant in order for title to vest in the remainderman. There, Eusebia Buford conveyed property in trust for her son, William M. Buford, and herself, or survivor.

She further provided that upon the death of the survivor of the two of them the property "shall go to and vest in my two other children, Legrand G. Buford and Florence I. Banks, one-third each, or to their heirs, should they or either of them be dead, * * *." Eusebia died first, and Legrand G. Buford died before his brother. Legrand made a will purporting to cut off his son, Coleman G. Buford, who survived William M. Buford. The court held Legrand's will was ineffective as he failed to survive the life tenant, William M. Buford, because the title was to vest upon the happening of a contingency—the death of the survivor of William M. and Eusebia Buford, and "then, and not until then, was the estate in remainder to vest. Our conclusion is also that then it was to vest on the happening of a contingency *and in the alternative.* The contingency was that Legrand G. Buford should then be alive. The alternative was that, if he be dead, it should vest in his heirs, and that the grantor meant to use the word 'heirs' in the sense of children, and not in the artistic or technical sense." (165 S.W. 1042[9].)

In *Norman v. Horton*, 344 Mo. 290, 126 S.W.2d 187 (1939), there was a deed which granted the title to " 'Celeste B. Curd, wife of William B. Curd during her natural life, and at her death, Remainder to the heirs of her Body, legally begotten, * * *.' " The object and intention of grantors was recited in the deed' that if the life tenant, Celeste, die without bodily heirs, *then* the title to the real estate shall revert and vest absolutely in the heirs of the grantor. The court said, page 192[12], "The instant grant employs the words 'then' 'at her death.' If they are to be given their natural effect when read with the other provisions of the grant, they refer (as in the *Eckle* case) [supra] to the 'title' vesting in the 'heirs at law' 'at her death.' " See also *Irvine v. Ross*, 339 Mo. 692, 98 S.W.2d 763 (1936), where a will devised land to an executor to hold until testator's daughter should remarry, at which time he should convey to the daughter for life and after her death to the heirs of her body, but if there be none "then to the heirs of this testator." It was held that the testator intended to designate the persons answering the description of his heirs at the time of his daughter's death, and not at the time of his own death. Compare also *Knox College v. Jones Store Co.*, 406 S.W.2d 675, 687 (Mo.1966); *Brittin v. Karrenbrock*, 186 S.W.2d 35, 37[1-3] (Mo. App.1945); and *Mizell v. Osmon*, 354 Mo. 321, 189 S.W.2d 306, 313[17, 18] (1945).

▆▆▆ *Hyde v. Hopkins*, 317 Mo. 587, 296 S.W. 382 (1927), cited by appellant, may be distinguished. There the will devised the remainder of the real estate to specifically named persons, not to a contingent class of persons who would be *then* "heirs at law" at the time of the death of the life tenant without leaving bodily heirs. Thus, in the *Hyde* case, there was only *one* contingency—that of the death of the life tenant without bodily heirs. Here, the additional contingency is present that the remaindermen, heirs of the testator as a class must survive the life tenant (tenant in fee tail) in order to have the remainder vest. Chester C. Epley died prior to Glen Epley, the life tenant. At the time of the execution of the quit-claim deed, October 19, 1957, Chester

C. Epley had nothing to convey because he did not survive Glen so as to become a member of the class of heirs entitled to take as designated reversioners upon the happening of both contingencies. Instead, respondents became the ascertained members of the class of heirs whose interest vested upon the death of Glen without bodily heirs, respondents having survived him and taking as descendants of testator through and standing in the place of their deceased father, Chester C. Epley. In the also cited case of *Lewis v. Lewis*, 345 Mo. 816, 136 S.W.2d 66 (1940), the court held (as in the *Hyde* case, supra) that a devise to a daughter for her life and at her death to her bodily heirs created an interest contingent upon her having bodily heirs, but that a residuary clause of the will transferred the reversionary interest to testator's widow, which was then a "vested contingent interest" (subject to being divested upon the daughter being survived by heirs of her body), which vested interest could be conveyed by the widow to the daughter, as was done, creating, in effect, a fee simple title which she could convey by deed or will, or which would pass by descent, defeasible only if she was survived by bodily heirs. In *Hobbs v. Yeager*, 263 S.W. 225 (Mo.1924), grantor reserved to himself the reversion, after granting to Robert and Margaret Yeager life estates, and upon their death to their children. No children were both of the Yeagers, who died in 1909 and 1922. Grantor made a will in 1888 devising the residue of his estate to certain persons, including plaintiffs. He died in 1888. *Thereafter*, the plaintiffs, among others, executed deeds to the defendants, held to convey their devised reversionary interests. In *Grimes v. Rush*, 355 Mo. 573, 197 S.W.2d 310 (1946), the deed to Rush was joined in by the life tenant, and her then apparent bodily heirs, who were her children who in fact survived her. It was held that they derived their title as purchasers from the original grantor, Fountain Hale, and that they held title contingently after that deed subject to it being defeated by their predeceasing their mother or by being defeated in part

by the birth of other children who would qualify as heirs of the body. No contingent class was created by the grantor's original deed. All these cases cited by appellants are distinguishable for reasons stated.

Appellant further contends that the trial court erred in adjudging that respondent had a one-third interest, it being argued that the heirs of J. J. Epley must be determined as of the date of his death, April 4, 1955, and those heirs included Glen Epley, who was deeded the life estate, making five intestate shares. It is true that "heirs" are determined ordinarily as of the date of death of an intestate. *Morris v. Ulbright*, 558 S.W.2d 660, 663 (Mo. banc 1977) [dissenting opinion]. It is above held, however, by the terms of J. J. Epley's will that it was intended by him that the class of his heirs entitled to take his devised reversion was to be determined as of the death of the life tenant, Glen Epley. Glen Epley, whose death was to determine the class to take the reversion, could not then be counted as an "heir". Nor could Ray T. Epley be counted as a then "heir", he having predeceased Glen, without children or descendants, thus lessening the numbers of the class. The trial court correctly determined that the interests of the heirs in existence at the time of Glen's death was divisible into three parts. Respondents were thus entitled to a one-third interest, and appellant Eleanor Epley, having acquired deeds from the heirs, Richard W. Epley and Nettie Black, which were not challenged, is entitled to two-thirds interest.

The judgment is affirmed.

All concur.