THEODORE SHORT TRUST and Elinor K. Short Trust, under trust agreements dated August 18, 1969, Mercantile Bank of Springfield, Trustee, Respondents,

v.

Charles A. FULLER, Jr., personal representative of the Estate of Theodore G. Short, Deceased, et al., Respondents/Appellants,

and

Pam Chinnis, et al., Appellants/Respondents.

Nos. 22681, 22741, 22683, 22740.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 12, 1999.

Motion for Rehearing and Transfer Denied Nov. 3, 1999.

Application to Transfer Denied Dec. 21, 1999.

---

Richard L. Schnake, Springfield, for Appellant Fuller.

Emory Melton, Cassville, and Robert S. Wiley, Crane, for Appellants/Respondents Pam Chinnis, et al.

Charles A. Redd, Timothy J. Prosser, St. Louis, for Michael F. Kelly, Molly Kelly Martin and Timothy L. Kelly.

ROBERT S. BARNEY, Judge.

This consolidated appeal involves a three-way dispute among claimants to the residue of the Theodore Short Trust and to the residue of the Elinor K. Short Trust.[1]

On August 18, 1969, Theodore Short ("Theodore") and his wife, Elinor K. Short ("Elinor") executed respective, revocable living trusts containing residuary dispositions which were essentially identical.

Elinor died intestate on January 11, 1973, and Theodore died testate on April 7, 1973. One child was born to the marriage of Theodore and Elinor, namely Theodore G. Short ("Teddy"). Teddy died testate on June 5, 1996, without issue.

Article II of each trust, in pertinent part, provided for the benefit of each grantor's spouse and their son, Teddy. Each grantor directed that upon the grantor's decease the net income of the trust, in the sole and absolute discretion of the trustee, could be distributed: (1) in whole or in part to the grantor's spouse or son; (2) to the descendants of the grantor's son, Teddy; or (3) accumulate in whole or in

part and be added to the principal of the trust.

Additionally, the following provisions are found in Article II of each trust:

Said trust hereinabove created after the decease of the Grantor shall continue for the life of my [spouse], and my son, [Teddy]. Upon the decease of the last to survive, said trust shall thereupon cease.

If my son is survived by issue, then all of the rest, residue and remainder of the Trust Estate of whatsoever kind and wheresoever situated, I direct shall be distributed equally and per stirpes to and among the issue of my son, [Teddy].
* * *

However, if my son is not survived by issue, then I will the following legacies to the following named persons:
[Distributions of cash to legatee(s) ]
*All of the rest, residue and remainder of the Trust Estate I direct shall be divided into two (2) equal portions. One equal portion shall be divided equally among my surviving brothers and sisters, per capita and not per stirpes.* The remaining one-half (½) of my residue estate I direct shall be distributed equally and outright to MICHAEL F. KELLY, MOLLY MARTIN, and TIMOTHY L. KELLY, or to those that survive, on a per capita basis. If MICHAEL F. KELLY survives, I direct that my Galena residence be made a part of his share.

(emphasis added; this clause is the subject of the disagreement among the parties).[2]

Michael Kelly, Molly Martin and Timothy Kelly survived Theodore and Elinor, and were living as of Teddy's death on June 5, 1996. None of Theodore's siblings survived Teddy.[3]

---

1. The record does not describe the assets of either trust.

2. Elinor's trust similarly provided for the same disposition save for the fact that it described *"my husband's surviving brothers and sisters, per capita and not per stirpes."* (emphasis added).

3. On the date of Theodore's death, April 7, 1973, he was survived by one brother, Dewey J. Short, and three sisters: Frances Short Vineyard, Elizabeth Short Allman and Helen Short Pauly.

After Teddy's death without issue, Mercantile Bank of Springfield ("Mercantile") brought two separate petitions for declaratory judgment in its capacity as trustee of both Theodore's trust and Elinor's trust. In each action, Mercantile requested the court to interpret the residuary clause as set out in Article II of each trust and determine the respective trust's residuary beneficiaries.[4]

One set of claimants ("Chinnis claimants") representing certain heirs at law of siblings who survived Theodore (*see* names of siblings at footnote two, *supra*) answered. These claimants posited that as heirs at law of the brother and sisters "surviving" at the time of Theodore's death, they were entitled to one-half of the residuary estate of each trust. They asserted that Theodore's trust and Elinor's trust, together with Theodore's will indicated an intention by each grantor to provide for equal distribution between the collateral heirs of Elinor and the collateral heirs of Theodore in the event that their son, Teddy, died without issue.

A second set of claimants, consisting of Intervenors Michael Kelly, Molly Kelly Martin and Timothy Kelly ("Kelly claimants") answered and asserted that they were lawfully entitled to their one-half of the residue as provided by each trust.[5] Additionally, they maintained that since none of Theodore's siblings survived Theodore's son, Teddy, any disposition of the property of either trust in favor of Theodore's siblings failed. They asked the court to direct Mercantile to hold the remaining one-half of the portion of the residue of each trust in a resulting trust for the benefit of Theodore's probate estate and "Elinor's [intestate] estate," respectively.

A third claimant, Charles A. Fuller ("Fuller"), the personal representative of Teddy's probate estate, answered Mercantile's petition and generally prayed for the court to give interpretation and construction to each of the two trusts.[6] Fuller adopted Mercantile's respective memoranda filed in each action in support of Mercantile's respective motions for summary judgment.

Mercantile argued that although the class of beneficiaries who were to inherit the disputed one-half of the residue of each trust were Theodore's surviving brothers and sisters, because no member of the defined class was living at the time of Teddy's death, "the disposition of the portion[s] of the trust[s] to be distributed to [Theodore's] surviving brothers and sisters fail[ed]" and Theodore "died intestate as to the failed portion[s] of the trust[s]."

Mercantile then postulated that "the proper disposition [of the failed interest in Theodore's trust] is by descent" as determined at the time of Theodore's death and

---

4. It should be borne in mind that Mercantile's two petitions for declaratory judgment did not immediately pertain to Theodore's Last Will and Testament ("Theodore's Will") dated August 18, 1969. This instrument had been previously admitted into probate in the probate court of Stone County and letters were duly issued to Mercantile's predecessor in interest as "executor" of Theodore's probate estate on April 26, 1973.

We observe that in Article III of Theodore's Will he devised and bequeathed the entirety of his "residuary estate" to Mercantile's predecessor in interest as trustee under his "Revocable Trust Agreement" dated August 18, 1969, i.e., Theodore's trust. Theodore also provided for the creation of a new testamentary trust, under the same terms and conditions as his inter vivos trust dated August 18,

1969, should it be determined that such inter vivos trust was either invalid or not in existence.

5. None of the parties in either of the two actions contested the distribution of one-half of the residue to the Kelly claimants, as provided in Article II of both Theodore's and Elinor's trust.

6. A guardian ad litem for the "Minor, Unknown and Unascertained Heirs of Helen Short, surviving wife of Dewey J. Short" also filed an answer and motion for summary judgment in each case. As best we can glean from the record, the guardian ad litem is not a party to any of the appeals filed in this matter.

that, therefore, the "failed interest" should be distributed to the probate estate of Theodore's son, Teddy.

Regarding the failed interest in Elinor's trust, Mercantile argued that since Elinor died intestate and both Elinor's husband, Theodore, and her son, Teddy, were deceased, one-half of the failed interest should be distributed "by descent" to Theodore's probate estate and one half of the failed interest should be distributed "by descent" to Teddy's probate estate.

Thereafter the parties filed and answered each other's respective motions for summary judgment in each case. The court entered an amended judgment, discussed more fully *infra*, in each declaratory judgment action.[7]

In Theodore's trust case, the court granted the Kelly claimants' Motion for Summary Judgment while denying all other motions for summary judgment. The court's pertinent conclusions are noted in the following lettered paragraphs.

[a] Because no brother or sister of [Theodore] survived the death of [Teddy] in 1996, any gift to [Theodore's] siblings under Article II of [Theodore's trust] failed.

[b] [T]he portion of the trust remainder which is the subject of [Theodore's] failed gift [is to] be held by ... Mercantile in 'resulting trust' for the benefit of [Theodore's] estate.

[c] Mercantile is obliged now to transfer all property held in resulting trust for [Theodore's probate estate] to itself as Trustee of the Trust. To administer the property in question according to the terms of [Theodore's trust], Mercantile must divide the subject property into "two (2) equal portions," one portion to be "distributed equally and outright to [Kelly claimants]," and one portion to be administered and distributed under the provisions of Article II of [Theo-

dore's trust] creating the failed gift to [Theodore's] siblings.

[d] Each and every portion of the Trust which is or becomes the subject of the failed gift to [Theodore's] siblings must be held in resulting trust for [Theodore's] estate and should ... pass under Article III of [Theodore's] Will to the Trustee of [Theodore's trust] which must, under Article II of [Theodore's trust], again divide the property into "two (2) equal portions," one portion to be distributed outright to [Kelly claimants] and one portion to circulate, yet again and again, through [Theodore's probate estate] and [Theodore's trust] until all of the property in question has passed, in successive one-half installments, to [Kelly claimants].

The court then Ordered that Mercantile "distribute such portion of the property held in resulting trust equally to the [Kelly claimants]."

Likewise, in the amended judgment in Elinor's trust case, the court made similar findings and conclusions of law. It also determined that Elinor had died intestate and that at her death only her husband, Theodore, and her son Teddy were her surviving heirs and each was entitled to receive an equal, one-half share of her intestate estate under the provisions of section "474.010(1)(a) RSMo, as written in 1973."

The court concluded that since both Theodore and Teddy were now deceased, "their respective, one-half shares must pass to their respective estates." The court then made similar dispositions as outlined in its amended judgment in Theodore's trust case. *See* sub-paragraphs (c) and (d), *supra.* The court determined and Ordered that:

[a] [Mercantile], holds the one-half portion of the property of [Elinor's trust] to be 'divided equally among Grantor's, [i.e., Theodore's] surviving brothers and

7. The court kept under advisement all requests for an award of reasonable attorney's fees and costs and determined that there was no just reason for delay in entering its amended judgment in both cases. *See* Rule 74.01(b), Missouri Court Rules (1998).

sisters, per capita and not per stirpes,' in resulting trust for the benefit of the Estate of Elinor K. Short;

[b] That [Mercantile] shall distribute the property held in resulting trust, one-half to [Teddy's probate estate] and one-half to the [Kelly claimants] in accordance with the terms of [Theodore's] Will and Trust Agreement.

## I.

The Chinnis claimants, representing certain heirs at law of Theodore's siblings that survived Theodore, bring separate appeals from the court's amended judgment in each of the declaratory judgment actions. *See* Appeals Numbered 22681 (Theodore's trust) and 22683 (Elinor's trust). These claimants assert in each appeal that the court erred in granting the Kelly claimants' motion for summary judgment and overruling their motion for summary judgment. In their sole point, they asseverate that the court "erred in determining that there was a lapse of one-half of the residuary disposition in the trust." They maintain that the residuary disposition [in each trust] is "distributable to the brothers and sisters who survived [Theodore], equally or to their heirs" because "the interest of such brother and sisters having vested at the death of Theodore Short, [was] subject only to divestment in the event of [Teddy] being survived by issue."

In Appeal Number 22741, Fuller, as personal representative of Teddy's probate estate, asserts court error in declaring that the Kelly claimants are entitled to receive half of the "lapsed" portion of Theodore's trust. While agreeing with Kelly claimants that the residuary grant to Theodore's "surviving" siblings under Article II of Theodore's trust failed, Fuller differs as to the proper disposition of the property constituting the failed grant. Fuller maintains that the failed one-half portion of the

residuary trust estate must be distributed as though Theodore had died intestate in that Theodore's Will "cannot validly dispose of the [lapsed] surplus but would pour the surplus over into a trust that is now known will fail, so that redistribution of the property through [Theodore's] Will would result in an incomplete devise." In his Appeal Number 22740, relating to Elinor's trust, Fuller raises the same point of error as in Appeal Number 22741.[8]

## II.

We review all points conjunctively since they are interrelated. In aid of our review we are obliged to observe the following legal precepts.

"We learn from *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993), that a party moving for summary judgment bears the burden of establishing a right to judgment as a matter of law on the record submitted." *Friedman v. Marshall*, 876 S.W.2d 745, 749 (Mo.App. 1994). "Any evidence in the record presenting a genuine dispute as to the material facts defeats the moving party's prima facie showing." *Id.* "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corp.*, 854 S.W.2d at 376. "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* "Our review is essentially *de novo.*" *Id.*

"It is the primary rule of construction of contracts, deeds and wills that they must be construed as a whole, giving effect to every part if it is fairly possible to do so, and thus determine the true intention of the parties." *Ott v. Pickard*, 361 Mo. 823, 827, 237 S.W.2d 109, 111–12 (1951). Similarly, the paramount rule of

---

8. Fuller also asserts that the probate court's amended judgment went beyond the issues raised in the Elinor Trust declaratory judgment action. Because of our holding this assertion of error is now moot and we need not address this alternative point.

construction in determining the meaning of a trust provision is that the grantor's intent is controlling. *In re McDonald Revocable Trust*, 942 S.W.2d 926, 931 (Mo.App. 1997); *In re Nelson*, 926 S.W.2d 707, 709 (Mo.App.1996); *Marvin F. Hall Trust v. Hall*, 810 S.W.2d 710, 713–14 (Mo.App. 1991); *First National Bank v. Hyde*, 363 S.W.2d 647, 652 (Mo.1962). "All technical rules of construction must give way to this controlling rule." *In re McDonald Revocable Trust*, 942 S.W.2d at 931. "In determining the intent of a grantor, courts are to consider the trust instrument as a whole and are not to give any clause in the trust undue preference." *Id.*

■■■ "[E]ach case of necessity is determined upon its peculiar facts and the particular instrument to be construed all to the ultimate and primary end of effectuating the settlor's intention." *Ratermann v. Ratermann*, 405 S.W.2d 891, 894 (Mo. 1966). In this regard, we observe that "Missouri courts generally use the same rules for construing both trusts and wills." *In re Nelson*, 926 S.W.2d at 709; *Lehr v. Collier*, 909 S.W.2d 717, 723 (Mo.App. 1995). We are mindful, however, that:

[t]he infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills in a context and under circumstances peculiar to the context of the will of each testator and the circumstances under which it was written make prior decisions construing similar words or phases of far less value as precedent than those of other fields of litigated controversies.

*Commerce Trust Co. v. Weed*, 318 S.W.2d 289, 294 (Mo.1958). A testator is presumed to know and intend the legal effect of the language he uses in his will and conceptually this applies to a grantor of a trust. *In re Nelson*, 926 S.W.2d at 709. "Words with a well-known technical meaning should be construed according to their technical meaning unless a contrary meaning appears in the granting instrument." *Id.* "The mere fact the parties disagree

upon the interpretation of a document does not render it ambiguous." *Id.* Whether an ambiguity exists in the instant trust instrument is a question of law and we are free to make our own determination as to the meaning of the trust instrument. *Id.*; *Lehr*, 909 S.W.2d at 723. "We review declarations of law *de novo.*" *In re Nelson*, 926 S.W.2d at 709.

In our analysis we must first decide whether the members of the class of Theodore's "surviving brothers and sisters" are to be determined as of the date of Theodore's death, as the Chinnis claimants maintain, or as of the date of the termination of the preceding life estate in Teddy without issue, as Fuller and the Kelly claimants assert. We find that Fuller's and Kelly claimants' arguments have merit.

We initially observe that the definition of the word "surviving" denotes:

Remaining alive. Living beyond the life of another or beyond the happening of some event so as to be entitled to a distribution of property or income.

BLACK'S LAW DICTIONARY 1446 (6 th ed.1990). However, in this instance, this definition is of little aid in determining the meaning of each trust's provisions. We, therefore, look to the law of vested and contingent remainders in aid of our determination.

■■■ We note that "[v]ested remainders (or remainders *executed*, whereby a present interest passes to the party, though to be enjoyed in futuro) are where the estate is invariably fixed, to remain to a determinant person, after the particular estate is spent." *Norman v. Horton*, 344 Mo. 290, 298, 126 S.W.2d 187, 191 (1939). On the other hand "[c]ontingent or executory remainders ... are where the estate in remainder is limited to take effect, either to a dubious or uncertain *person*, or upon a dubious or uncertain *event*; so that the particular estate may chance to be determined, and the remainder never take effect." *Id.*; *see Davidson v. Davidson*,

350 Mo. 639, 167 S.W.2d 641, 642 n. 2 (1943).[9]

"[I]t is generally held, under or apart from statute so providing, that the distinguishing characteristic of a vested remainder is a present capacity to take effect in possession, if the possession were to become vacant, *with the certainty that the event on which the vacancy depends will happen sometime.*" 31 C.J.S. *Estates* § 71 (emphasis added). Stated another way, "[i]t is characteristic of a vested remainder that the legal title comes to reside at once in an identifiable person or persons, although his or their possession·may be postponed until termination of the preceding estate." *Graves v. Hyer*, 626 S.W.2d 661, 664 (Mo.App.1981). On the other hand, with a contingent remainder "the right to the future enjoyment of the property is not fixed or certain." 31 C.J.S. *Estates* § 72. "It is a remainder which cannot vest until there has been compliance with a condition precedent, other than the determination of the preceding particular estate, that is, a condition either as to the persons who are to take or as to the event on which the preceding estate is to terminate." *Id.*

"[I]n determining whether a given remainder is vested subject to complete defeasance or is contingent, the form of the limitation is of primary importance." 31 C.J.S. *Estates* § 81.

> If the form indicates that the condition is to happen before the remainderman is to take, the remainder is ordinarily held to be contingent; but if the form is that of an unconditional gift followed by language to the effect that the remainder is to be taken away from the remainderman if a condition happens, then the remainder is generally construed as vested subject to complete defeasance.

*Id.*

As previously set out, in support of their proposition that the members of the class

of "surviving brothers and sisters" per Article II of each trust should be determined as of the date of each grantor's death, the Chinnis claimants point to the rationale and holding in *Tapley* and the genre of cases it represents.

In *Tapley* the testator gave his son, Joe Tapley, outright one-half of his estate. *Tapley*, 217 S.W.2d at 370–71. The remaining half he left as a life estate in trust to each of two grandchildren, making his son the trustee. *Id.* The will provided that upon the death of either grandchild, without bodily heirs, his or her trust estate should pass to the other grandchild at whose death, without bodily heirs, the trust estate would then "go to and become the property of ... Joe Tapley." *Id.* Unlike in the devises to his grandchildren, the testator did not append the words "and his heirs" to this final devise. *Id.* Joe died before either grandchild and devised and bequeathed his entire estate to his widow, who succeeded him as trustee of the two trust estates until both the grandchildren died, intestate and without bodily heirs. *Id.* She then claimed legal title to the trust property as sole devisee and legatee of her husband, Joe Tapley. *Tapley*, 217 S.W.2d at 371.

In construing the will so as to grant Joe Tapley's widow his interest in the estate, the Missouri Supreme Court determined that Joe Tapley, as an ascertained remainderman under the will, took at his father's death an alternative contingent remainder in the trust estate, which became a vested estate in him if living and if not living, then his heirs or assigns. *Id.* at 373. The court noted that "[t]estator did not condition Joe Tapley's estate upon his surviving the survivor of the life beneficiaries." *Id.* at 373 (emphasis added). In emphasizing that "[o]f prime importance in the construction of wills is the intention of the testator," *Id.* at 374, the Court found that it was "evident" that save for a small

---

9. "Vesting of interests in personal property is subject to the same rules as real estate."

*State ex rel. Cooper v. Cloyd*, 461 S.W.2d 833, 838 (Mo. banc 1971).

bequest to another granddaughter, testator "intended that his son, Joe, take the whole of his estate" should testator's named grandchildren die without bodily heirs. *Tapley*, 217 S.W.2d at 374.

*Tapley* does not assist the Chinnis Claimants. *Tapley* is distinguishable from the case at bar in text, context and facts. In *Tapley* there was no residuary clause to interpret. Further, the Tapley testator made no express condition that his son had to survive the life beneficiaries in order to take. On the other hand, the Short Trusts provide for residuary distributions only to those "surviving brothers and sisters" of Theodore. Considering each trust instrument as a whole, *In re McDonald Revocable Trust*, 942 S.W.2d at 931, and the intent of each grantor as gleaned from such instrument, we are convinced that the word "surviving" constitutes a condition precedent to any sibling taking under the residuary clause, determinable only at the death of Teddy without issue. *See Graves*, 626 S.W.2d at 665; *see also In re Yeater's Trust Estate*, 295 S.W.2d 581 (Mo.App. 1956).

▮▮▮▮ Any estate vesting in Theodore's "surviving brothers and sisters" was subject to two conditions precedent: first, each trust provided concurrently for grantor's spouse and their son and even permitted the trustee to exhaust the trust assets for the spouse and son's benefit; second, each trust then disposed of any remaining assets alternatively, depending upon whether grantor's son, Teddy, was survived by issue. Thus only after a series of other events occurred or failed to occur, did Theodore's surviving siblings have any hope of receiving anything under the terms of the trust. Therefore, prior to vesting, the estate of Theodore's siblings "was subject to conditions *precedent*, an ensign of the contingent remainder as opposed to a condition *subsequent*." *Graves*, 626 S.W.2d at 665. "While the law favors vested remainders and where doubt exists

declares a remainder to be vested rather than contingent, yet that is not or should not be done where it is apparent that a contingent remainder was intended." *St. Louis Union Trust Co. v. Herf*, 361 Mo. 548, 235 S.W.2d 241, 248 (1951).[10]

The following cases appear to be in consonance with our foregoing analysis.

In *Graves*, the will provided a devise to testator's granddaughter, Jennie D. Palmer, for life, and at her death to the heirs of her body; "and should my said granddaughter die without issue then said property shall go to my son, Charles E. Cook, and the heirs of his body; and should my said son be then dead and without issue, then all of said property shall revert to my nearest blood kin." *Graves*, 626 S.W.2d at 662. In *Graves* the provision "for nearest blood kin" created a contingent remainder which vested when testator's granddaughter died without issue, testator's named son having predeceased her without issue, and thus "nearest blood kin" of testator were to be ascertained at the death of the life tenant rather than at the death of the testator. *Id.* at 662, 664–65.

Also, in *Norman, supra,* a deed gave a life estate to Celeste B. Curd, "with Remainder over to the heirs-of-her-Body, legally begotten — but should the said Celeste B. Curd die without bodily heirs, as aforesaid, surviving her, then the title to the ... real estate, at her death, shall revert to and vest absolutely in the heirs-at-law of the said John Herriman...." *Norman*, 126 S.W.2d at 188. The *Norman* court found that "[t]he remainder to 'the heirs of [Celeste B. Curd's] body, legally begotten ... surviving her', was dubious and uncertain as to person and event." *Id.* at 191. Hence, a contingent remainder vesting only at the death of the life tenant was created. *Id.* at 191–92.

Furthermore, in *Epley v. Epley*, 585 S.W.2d 308 (Mo.App.1979), the devise was to testator's grandson "for and during his

---

10. *See also* Simes and A. Smith, The Law of Future Interests, § 145 (2d ed.1956) setting out and discussing illustrations of vested and contingent remainders.

natural life and at his death to go to the heirs of his body but should my said grandson go without leaving bodily heirs, then said real estate shall revert to my heirs at law." *Id.* at 309. In *Epley* the class of heirs entitled to take the devised reversion was determined as of the death of the life tenant. *Id.* at 311.

Additionally, in *Irvine v. Ross*, 339 Mo. 692, 98 S.W.2d 763 (1936), a will devised land to an executor to hold until the testator's daughter should remarry, at which time he was to convey the land to the daughter for life and then, after her death, to the heirs of her body, but if there be none "then to the heirs of this testator." *Id.* at 765. It was held that the testator intended to designate the persons answering the description of his heirs at the time of his daughter's death, and not at the time of his own death. *Id.* at 767.

Lastly, in *Commerce Trust Co., supra,* the testator by will provided for a trust with the income to be paid to his daughters and daughter-in-law, and further provided that when such life beneficiaries died and all their children reached the age of 21 years, the trust would terminate with distribution to be made to testator's lineal descendants per stirpes. The will further provided that in event of the death of life beneficiaries and all lineal descendants prior to termination of the trust, then upon death of last of beneficiaries the trust would terminate and the estate be paid to decedent's heirs at law. The court held that the remainder in such trust did not vest in testator's lineal descendants at the time of his death but vested in testator's lineal descendants surviving at the time of termination of the trust. *Commerce Trust Co.,* 318 S.W.2d at 291–92, 294–96 (*citing generally St. Louis Union Trust Co. v. Greenough,* 282 S.W.2d 474 (Mo.1955);

*Taylor v. Hughes,* 363 Mo. 389, 251 S.W.2d 94 (1952); *St. Louis Union Trust Co.,* 235 S.W.2d at 241; *Coley v. Lowen,* 357 Mo. 762, 211 S.W.2d 18 (1948); *Kingston v. St. Louis Union Trust Co.,* 348 Mo. 448, 154 S.W.2d 39 (1941); *Irvine v. Ross,* 339 Mo. 692, 98 S.W.2d 763 (1936); *Carter v. Boone County Trust Co.,* 338 Mo. 629, 92 S.W.2d 647 (1935)).

In view of the rationale of the foregoing cases, we are persuaded that any remainder interest in the class of Theodore's surviving siblings was limited to take effect upon the dubious or uncertain event of Teddy dying without issue and constituted, therefore, a contingent remainder interest. *See Norman,* 126 S.W.2d at 191.[11]

Since Theodore's class of surviving siblings had but a contingent remainder interest in the residue of both trusts, to qualify as a residuary beneficiary a sibling had to be living at Teddy's death without issue. Since no sibling was living at Teddy's death without issue, the class of Theodore's "surviving brothers and sisters," as set out in Article II of each trust instrument, closed empty. Each trust's residuary distributions in favor of Theodore's "surviving brothers and sisters," consisting of one-half of the residue, became inoperative, i.e. failed, in accordance with the directions of each trust's grantor.

The question arises, then, what disposition is to be made of this failed one-half of the residue of each trust?

### III.

As previously set out, Fuller maintains in Appeal Number 22741 [Theodore's trust] that the court erred in declaring that the Kelly claimants were entitled to receive the "lapsed" portion of the grantor's trust estate.[12] He maintains that

---

11. Additionally, as a further aid in construction of the last paragraph of Article II, we also observe that Theodore's surviving siblings were to be distributees, if at all, on a per capita and not a per stirpes basis. This "per capita" direction is a strong indication that the grantor of each trust did not intend for

any successors in interest to Theodore's siblings to take any beneficial interest in the trust property.

12. The Chinnis claimants also filed briefs in response to Fuller's two appeals herein. They reiterate their arguments set out in the Ap-

the "property must be distributed as though [Theodore] died intestate."

In Appeal Number 22740 [Elinor's trust], Fuller acknowledges the correctness of the court's findings that Elinor died intestate; hence he agrees that Theodore and Teddy, as surviving heirs, should share equally in her "intestate estate." However, Fuller takes umbrage with the further determination by the court that Theodore's share of Elinor's "intestate estate" passes into Theodore's probate estate, which by virtue of Article III of Theodore's Will must then be poured back into Theodore's trust.[13] Fuller argues both in Appeal Number 22741 and 22740 that the "notion that the property repeatedly cycles through [Theodore's Will and Trust] and that the [Kelly claimants] take half of what cycles through each time, reducing the property until at some undefined point the property becomes miniscule enough that they take all of the remainder, not half, is simply not a workable legal principle." We agree.

As Fuller correctly asserts, in order to sustain the probate court's disposition of the failed gift, at some point the Kelly claimants must obtain all of what remains. However, the repeated act of halving of the property merely reduces the portion available to be halved again, never exhausting the remaining property. This is particularly the case with the real property. Indeed, as Fuller points out:

> [f]ractional interests in real property are commonplace and exist even to the extreme. E.g., . . . *Baber v. Henderson*, 156 Mo. 566, 57 S.W. 719 (1900) (referring to interests of ⅔₈ and 58/315).

Some part always remains for the cotenant. The cotenant has the right to possess the whole, *Goforth v. Ellis*, 300 S.W.2d 379, 383 (Mo.1957), and may sue in ejectment to "recover his aliquot part or share of the estate." *Baber*, 57 S.W. at 719.

More to the point, and as previously set out, we observe that Theodore's Will provided at Article III that:

> I give devise and bequeath all the rest, residue and remainder of my property and estate . . . of which I shall die seized or possessed, or of which I shall be entitled to dispose at the time of my death (all of such property being hereinafter referred to as my residuary estate) to [Mercantile] . . . as Trustee under [Theodore's *inter vivos* trust] . . . to be added to and held, managed, invested, reinvested and distributed as a part of the trust estate created thereunder upon all the terms, trusts and conditions pertaining thereto. . . .

Fuller is correct when he asserts that [Theodore's] "[w]ill cannot validly dispose of the surplus but would pour the surplus over into a trust that is now known will fail, so that redistribution of the property through the will would result in an incomplete devise." *See supra; see also parallel discussion in Traders National Bank v. Levine*, 528 S.W.2d 497, 500–501 (Mo.App. 1975); *Payne v. Barnes*, 638 S.W.2d 299, 303 (Mo.App.1982).

Furthermore, except for dividing the trust residue into two equal parts for distribution, Theodore's trust makes no provision for the distribution of any failed devise or bequest. Under these circum-

---

peals Numbered 22681 and 22683. Accordingly, they maintain that the probate court should be reversed and should be ordered to distribute one-half of the residue in each trust to the "heirs of the four siblings who survived" each grantor, so as to provide for one-half of the residue of the trust estate.

13. Recall that the probate court provided that the "failed gift to [Theodore's] siblings must be held in resulting trust for [Theodore's estate] and should . . . pass under Article III of

[Theodore's] Will to the Trustee of [Theodore's trust] which must, under Article II of [Theodore's trust], again divide the property into 'two (2) equal portions' one portion to be distributed outright to [Kelly claimants] and one portion to circulate, yet again and again, through [Theodore's probate estate] and [Theodore's trust] until all of the property in question has passed, in successive one-half installments, to [Kelly claimants]."

stances we determine that Theodore's trustee holds the surplus in a resulting trust.[14]

In *Barry v. Barry*, 579 S.W.2d 136 (Mo. App.1979), the Eastern District of this Court reviewed a revocable inter vivos trust instrument which made no provision as to distribution upon revocation of the trust. The court noted that "[u]pon termination of a trust, if the indenture is silent on the issue, it is the trustee's fiduciary duty to reconvey title to the beneficial owners or hold same upon a resulting trust for the settlor(s)." *Id.* at 140.

Similarly, *Estate of McReynolds*, 800 S.W.2d 798 (Mo.App.1990), involved a testamentary trust wherein the trust failed without provision for disposition of the assets. *Id.* at 798 (*citing* Restatement (Second) of Trusts, Section 411, cmt. c (1959)). The *McReynolds* court determined that "the trustee held the trust property in a 'resulting trust' for Testator or his estate." *Id.* at 801. The court reasoned that "[b]ecause the residuary clause of Testator's will created the trust and the trust failed, Testator died intestate as to the residue of his estate." *Id.* Furthermore, in *Earney v. Clay*, 516 S.W.2d 59 (Mo.App.1974), this Court pronounced:

> [W]here an express private trust is gratuitously created by will and the property bequeathed or devised to create it proves to be larger in amount than is necessary to accomplish the purpose of the trust, the surplus is to be held upon a resulting trust for the estate of the settlor (Restatement, Second, Trusts § 430; Bogert, Trusts, 2d ed., § 469; Scott, Trusts § 430; Bogert, Law of Trusts § 76 4th ed. Hornbook Series), and if the sum constituting the resulting trust be not validly disposed of by will, it should be distributed as provided for partial intestacy. § 474.030, RSMo 1969, V.A.M.S.

*Earney*, 516 S.W.2d at 67; *see also Jones v. Patterson*, 271 Mo. 1, 9, 195 S.W. 1004, 1006 (1917)("[w]here a devise in trust is invalid in not being fully expressed or clearly defined, the property descends to the heirs at law").

Accordingly, we determine that Theodore's trustee holds the surplus arising from the failed devise and/or bequest under Article II of Theodore's trust in a resulting trust for the benefit of Theodore's heir at law, i.e., Teddy. This surplus shall be distributable to the personal representative of Teddy's estate. *See* § 474.010(2)(a), RSMo 1969.

 We further determine, as in Theodore's case, that Elinor's trustee holds the surplus arising from the failed devise and/or bequest under Article II of Elinor's trust in a resulting trust for the benefit of the heirs at law of Elinor, i.e., Theodore and Teddy. *See* §§ 474.010(1) and (2), RSMo 1969. That portion of the resulting trust distributable to Theodore under the provisions of section 474.010(1) and (2), *supra*, shall in turn be distributed to the

---

14. "Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality." Restatement (Second) of Trusts § 411 (1959); *see also* 5 Austin Wakeman Scott & William Franklin Fratcher, "The Law of Trusts" § 411.1, at 30 (4th ed.1989). Comment "h", Restatement (Second) of Trusts § 411 (1959) also sets out that "[t]his is true whether the trust fails as to a fractional share of the trust property, or as to the whole of the trust property during or following a specified period of time." Furthermore, the "rule stated in this Section is applicable not only where an intended trust fails at the outset but also where a trust is created which subsequently fails. Thus, if the owner of property transfers it in trust to pay the income to one beneficiary for life, and on his death to convey the principal to others, and the disposition of the principal is on a contingency which does not occur, there is a resulting trust for the transferor or his estate on the death of the life beneficiary." Restatement (Second) of Trusts § 411 cmt. k (1959).

personal representative of Teddy's estate. *Id.*

The amended judgments of the court are each reversed and remanded for entry of respective judgments in accordance with the opinion of this Court.

GARRISON, C.J., concurs.

PREWITT, J., concurs.