

# In the
# Missouri Court of Appeals
## Western District

KELSEY ALEXANDER,      )
     )
       Appellant,      )    WD79378
     )
v.      )    OPINION FILED: August 23, 2016
     )
UMB BANK, NA, TRUSTEE OF THE    )
DARTHEA STODDER HARRISON    )
TRUST, ET AL.; JODI LEA    )
STODDER,      )
     )
       Respondents.      )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kathleen A. Forsyth, Judge

Before Division Two: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Kelsey Alexander ("Alexander") appeals from a judgment denying her petition to construe a trust to require distribution to the descendants of the settlor's deceased brothers' children. Because we agree with Alexander that the trust created a remainder interest in settlor's deceased brothers' children that was descendible and that was not subject to the condition of survival, we reverse and remand.

## Factual and Procedural Background

Darthea Stodder Harrison ("Settlor") formed a trust by executing a trust agreement on March 18, 1947 ("Trust"). The Trust was executed in Kansas. UMB Bank, N.A., ("UMB") is the trustee of the Trust, and has administered and continues to administer the Trust in Jackson County, Missouri.

Settlor received monthly income from the Trust during her lifetime according to Article One, section (a) of the Trust. Article One, section (c) of the Trust provided that if Settlor predeceased her son, William Stodder Harrison, Jr. ("Settlor's Son"), then monthly income from the Trust would be paid to Settlor's Son during his lifetime.

Settlor died on May 31, 1962. Settlor's Son was living on that date. Settlor's Son thus received monthly income from the Trust until his death. Settlor's Son died on March 8, 2013.

Article One, section (e) of the Trust provided:

Upon the death of Settlor, or upon the death of Settlor's son, Williams S. Harrison, Jr., whichever shall last occur, . . . this trust shall terminate, and upon such termination, the trust estate, including all increment and additions thereto, shall be paid over, distributed and delivered per stirpes to the lawful bodily issue of Settlor's son, William S. Harrison, Jr., if any there be; and, if none, the said remainder of the trust estate shall be paid over, distributed and delivered to Settlor's brothers, R.H. Stodder and F.G. Stodder. In the event either the said R.H. Stodder or F.G. Stodder shall be deceased, upon the termination of this trust as aforesaid, ***the share of said brother shall be paid over, distributed and delivered to said deceased brothers' children***.

(Emphasis added). The Trust terminated by its plain terms on March 8, 2013, when Settlor's Son died. Termination of the Trust triggered the obligation to pay over, distribute and deliver the remaining Trust assets as directed by Article One, section (e).

2

When the Trust terminated, Settlor's Son had no bodily issue, and R.H. Stodder and F.G. Stodder ("Settlor's Brothers") were both deceased.[1] As a result, the highlighted language in Article One, section (e) remained the only potentially operative provision for distribution of the Trust assets.

When the Trust terminated, all of Settlor's Brothers' children were also deceased.[2] However, those children had children.[3] Alexander is one of those children, as she is the granddaughter of F.G. Stodder. Because the Trust did not expressly specify the Settlor's intent should all of Settlor's Brothers' children predecease the Trust's termination, UMB petitioned the Jackson County Circuit Court Probate Division (hereinafter "Probate Court") for instructions on how to distribute the Trust's assets.[4] UMB did not take a position with respect to the proper recipients of the Trust assets, but did name known grandchildren of F.G. and R.H. Stodder in the petition. The Probate Court advised UMB by letter that its petition did not present a justiciable controversy because, according to the court, the Trust "fail[ed] because there are no designated beneficiaries." The Probate Court's letter reasoned that the Trust "provided for [Settlor's Brothers'] children, but made no provision for [Settlor's Brothers'] more remote descendants." Because the Probate

---

[1]In fact, both brothers predeceased the Settlor.

[2]F.G. Stodder had three children, Margarete, Fredrick, and Darthea, who died in 2003, 1925, and 2008, respectively. R.H. Stodder had two children, Richard and George, who died in 1984 and 1969, respectively.

[3]The record suggests that F.G. Stodder's daughter Margarete had three children, two of whom are still living; that F.G. Stodder's daughter Darthea had four children all of whom are living; that R.H. Stoddard's son Richard had one daughter who may have been adopted-out to another family and is still living; and that R.H. Stoddard's son George had two children, one of whom was naturally born and is no longer living, and one of whom was adopted and is still living. We are not finding these facts to have been conclusively established, but note only what appears in the record at this time.

[4]Case Number 14P8-PR00398.

3

Court refused to entertain UMB's petition, summons and service packets were never released, and the grandchildren of Settlor's Brothers were never notified of the petition.

After the Probate Court refused to consider its petition, UMB filed a petition to reopen Settlor's probate estate in the District Court of Johnson County, Kansas (the "Kansas Probate Court") in order to distribute the assets from the Trust through Settlor's estate.[5] The Kansas Probate Court scheduled a hearing on UMB's petition and authorized delivery of notice to interested persons, including Alexander. Alexander objected to the petition, and moved to stay the Kansas proceeding to permit the Missouri Probate Court to entertain a suit she filed concerning distribution of assets from the Trust. The Kansas Probate Court stayed its proceedings.

Alexander's petition in the Probate Court sought to terminate the Trust and to distribute assets per its terms, or alternatively to modify the Trust.[6] Alexander took the position that pursuant to the Trust:

> [T]he children of R.H. and F.G. Stodder held contingent remainder interests that became vested upon the death of [Settlor] . . . and [Settlor's Son] . . . . The remainder interest held by the children of R.H. and F.G. Stodder passed through their respective estates upon their death. Accordingly, the heirs and devisees of R.H. and F.G. Stodder have a direct, vested property interest in the Trust Estate. The Trust did not fail. It passed property interests at the time of its creation to specifically identified beneficiaries, which have since vested.

At Alexander's request, summons were issued and service was had on each of the individuals identified as descendants of R.H. Stodder and F.G. Stodder. The identified

---

[5]Settlor had a will which she executed on August 22, 1950. The will appears to have been admitted to probate in Johnson County, Kansas on June 25, 1964.

[6]Alexander's petition was assigned Case Number 15P9-PR00128, and was consolidated by administrative order with UMB's earlier filed petition seeking instructions about distribution of the Trust assets, Case Number 14P8-PR00398.

4

descendants have not opposed Alexander's petition. UMB requested only that judgment be entered consistent with the terms of the Trust and Settlor's intent, expressing no position about Alexander's proposed construction of the Trust.

On January 14, 2016, without a hearing, advance notice, or the benefit of evidence, the Probate Court entered a judgment denying Alexander's petition ("Judgment"). The Judgment found that the Trust terminated by its terms upon the death of Settlor's Son on March 8, 2013. The Judgment found that the "remaining relief requested, an order construing the trust to provide for distribution of the remaining trust assets to the descendants of the [Settlor's Brothers'] children, is inconsistent with the Court's understanding of the [Settlor's] intention."

Alexander filed this timely appeal.

### Standard of Review/Choice of Law

"A court-tried probate case is reviewed under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *In re Estate of Schooler*, 204 S.W.3d 338, 342 (Mo. App. W.D. 2006). "Under that standard, the probate court judgment will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Id.* (quoting *Murphy*, 536 S.W.2d at 32). "'An appellate court will conduct de novo review of questions of law, which includes determination of the meaning of a trust instrument, and give no deference to the trial court's judgment in such matters.'" *Brams Trust v. Hayden*, 266 S.W.3d 300, 304 (Mo. App. W.D. 2008) (quoting *Betty J. Weldon Revocable Trust v. Weldon*, 231 S.W.3d 158, 173 (Mo. App. W.D. 2007)).

5

In the absence of trust language to the contrary, "the law of [a] trust's principal place of administration will govern administrative matters and the law of the place having the most significant relationship to the trust's creation will govern the dispositive provisions." Comment, Uniform Trust Code, section 107; K.S.A. section 58a-107 (2003) (adopted nearly verbatim from Uniform Trust Code, section 107); *Hudson v. UMB, N.A.*, 447 S.W.3d 714, 719 (Mo. App. W.D. 2014) (citing and applying section 107 Comment). The parties agree that although the Trust is administered in Missouri, Kansas has the most significant relationship to the Trust's creation, as the Settlor was a Kansas resident and executed the Trust in Kansas. Because Alexander's first point on appeal requires us to determine the meaning of the dispositive provisions of the Trust, the parties agree that Kansas law governs our resolution of point one on appeal.[7]

**Analysis**

Alexander raises three points on appeal. In her first point, Alexander argues that the trial court erred in concluding that the Trust assets should not be distributed to the descendants of Settlor's Brothers' children because, as a matter of law, the Trust afforded Settlor's Brothers' children with descendible property interests that were not conditioned on survival. In her second point, Alexander argues in the alternative that it was error not to modify the Trust to require distribution to the descendants of Settlor's Brothers' children. In her third point, Alexander argues in the alternative that it was error to enter the Judgment without affording Alexander notice and an opportunity to be heard.

---

[7]Having so concluded, the parties also agree that Missouri law and Kansas law are consistent in all respects relevant to this opinion. As such, we cite to both Kansas and Missouri decisions in construing the Trust's dispositive terms.

6

Alexander's first point on appeal is dispositive, rendering it unnecessary to address her second and third points on appeal.

The resolution of Alexander's first point on appeal requires us to determine the intended meaning of "Settlor's Brothers' children." Did the Settlor intend, as the Probate Court concluded, to require each of Settlor's Brothers' children to survive the Trust's termination such that no distribution would be made to a child's descendants? Or did the Settlor intend, as Alexander argues, to permit the interest in favor of Settlor's Brothers' children to be descendible through a child's estate or by intestacy should a child predecease the Trust's termination? Stated simply, we must determine whether the Settlor intended survival to be a condition of the interest in favor of Settlor's Brothers' children.[8]

"[C]ourts generally use the same rules for construing both trusts and wills." *In re Nelson*, 926 S.W.2d 707, 709 (Mo. App. S.D. 1996). "The cardinal rule for the construction of a [trust] is to ascertain the intention and purpose of [settlor] from the language used." *Baldwin v. Hambleton*, 411 P.2d 626, 630 (Kan. 1966). "The primary consideration in the interpretation of a [trust] is the intention of the [settlor], and, if it can be ascertained, that intention must govern, if it is not contrary to a settled rule of positive law or in violation of public policy." *Shannep v. Strong*, 160 P.2d 683, 689 (Kan. 1945) (quotations omitted). "[S]uch intention must be ascertained not from any single or isolated provision but from all provisions contained within the four corners of the

---

[8]UMB does not take a position about the proper construction of the Trust. In its Brief, it accepts Alexander's statement of facts and simply offers additional case law for our consideration as we determine the meaning of the Trust's dispositive provisions.

7

instrument and from circumstances surrounding its execution if they are needed to clarify the [settlor's] true purpose and intent." *Id*. at 688. "A testator is presumed to know and intend the legal effect of the language he uses in his will and conceptually this applies to a grantor of a trust." *Theodore Short Trust v. Fuller*, 7 S.W.3d 482, 488 (Mo. App. S.D. 1999); *see also Trautz v. Lemp*, 46 S.W.2d 135, 139 (Mo. banc 1932) (holding that testator "is presumed to have known the law"); *Blue Ridge Bank and Trust Co. v. McFall*, 207 S.W.3d 149, 157 (Mo. App. W.D. 2006) (settlor is presumed to have known and intended the legal effect of the language used).

Article One, section (e) of the Trust created a series of remainder interests in favor of Settlor's Son's bodily issue, Settlor's Brothers', and Settlor's Brothers' children. A remainder interest is a "future interest" that is "created in a transferee." Restatement (Third) of Property Section 25.2 (2011). "[A] future interest is one which involves a postponement of the possession and enjoyment of the property." L. Simes & A. Smith, The Law of Future Interests, section 575 (3d ed. 2014).

Remainder interests are either vested or contingent. A "vested" remainder interest is "not subject to any condition precedent other than the termination of the preceding estates." L. Simes & A. Smith, The Law of Future Interests, section 571 (3d ed. 2014). With vested remainders, the estate in remainder passes by the conveyance (that is, when the will or trust takes effect), but possession and enjoyment of the estate in remainder are postponed, though "invariably fixed to remain to certain determinate persons." *Bunting v. Speek*, 21 P. 288, 290 (Kan. 1889). A "contingent" remainder interest is one where "the right to possession or enjoyment is subject to a condition precedent other than the

8

termination of prior interests."  L. Simes & A. Smith, The Law of Future Interests, section 571 (3d ed. 2014).  With contingent remainders, "the estate in remainder is limited to take effect either to a dubious or uncertain person, or upon a dubious and uncertain event; so that the particular estate may be determined, and the remainder never take effect." *Bunting*, 21 P. at 290.

By these definitions, the remainder interest in favor of Settlor's Brothers' children was a contingent remainder, as the interest was to take effect upon two dubious and uncertain events: (i) Settlor's Son dying without bodily issue, and (ii) one or both of Settlor's Brothers predeceasing the Trust's termination.  Consistent with this observation, Alexander characterizes the interest in favor of Settlor's Brothers' children as a contingent remainder interest.

"Under modern rules of property," however, the distinction between vested and contingent remainder interests has been rendered largely irrelevant.  John Borron, 5 Mo. Prac., Probate Law & Prac., section 342 (3d ed. 2014).  It is a generally accepted proposition that a remainder interest need not be vested to be descendible or subject to devise by intestacy.  *Id*. ("[A] contingent interest [where the contingency is other than survival] is descendible or may be devised or may pass by intestate descent."); *see also* L. Simes & A. Smith, *The Law of Future Interests*, section 594 (3d ed. 2014) (noting that "a large body of authority" supports "the devisability and descendability of contingent future interests" and noting that "it is clear that a contingent future interest may be transmissible" through an estate).  Thus, regardless whether the remainder interest in

favor of Settlor's Brothers' children is characterized as vested or contingent, the general rule suggests that the interest is descendible through an estate or by intestacy.

There is an exception to this general rule. If a remainder interest (whether vested or contingent) is conditioned on survival, than the "interest is completely lost if [a beneficiary] fails to survive until the preceding interests are terminated and the time has come for [the beneficiary] to possess and enjoy the property." L. Simes & A. Smith, *The Law of Future Interests*, section 575 (3d ed. 2014). In such a case, the remainder interest (whether vested or contingent) is not descendible through an estate or by intestacy. John Borron, 5 Mo. Prac., Probate Law & Prac., section 342 (3d ed. 2014) (where remainder interest is contingent on survival it is not descendible). If survival is a condition imposed on a contingent remainder interest, then survival is a condition precedent to the right to possess and enjoy the property, and thus to the ability of the interest to descend through an estate or by intestacy. L. Simes & A. Smith, *The Law of Future Interests*, section 575 (3d ed. 2014). If survival is a condition imposed on a vested remainder interest, then survival is a condition subsequent that operates "to divest a previously vested interest," and thus operates to divest any right of descent. *Id*. The outcome is the same, regardless whether the remainder interest is vested or contingent.

It is uncontested that the Trust does not express survival as a condition of the reminder interest in favor of Settlor's Brothers' children. "[A] requirement of survival is never implied in the absence of specific language giving rise to the implication." L. Simes & A. Smith, *The Law of Future Interests*, section 576 (3d ed. 2014). "[T]he cases in which the courts imply a condition precedent of survivorship [of the future interest] are

10

those in which the language as to the time of distribution actually expressed in the [trust], if taken literally, cannot be carried out unless the legatee or devisee survived." *Id*. Here, there is no language in the Trust as to the time of distribution to Settlor's Brothers' children that, taken literally, cannot be carried out unless the child survives. Thus, application of the general rule would seem to require the conclusion that the remainder interest in favor of Settlor's Brothers' children was descendible by estate or intestacy since no condition of survival was expressed in the Trust.

However, in tension with the principle that a condition of survival is never implied is another settled principle. A settlor is presumed to use language "in its ordinary and normal sense." John Borron, 5 Mo. Prac., Probate Law & Prac., section 357 (3d ed. 2014). "Hence, a devise to 'children' prima facie is to those immediate descendents of the first degree of the named ancestor." *Id*.; *see Trautz*, 46 S.W.2d at 141 ("[T]he primary and ordinary meaning of the word 'children' is the immediate descendants in the first degree of the person named as ancestor . . . . [unless] the will . . . indicate[s] that the testator intended to use the word in [an]other sense.").

Kansas decisions assist in the proper resolution of the apparent conflict between these two principles. First, "[t]he law favors early vesting of testamentary gifts and unless a contrary intent appears, interests created by a [trust] are to be construed as vested rather than contingent." *Baldwin*, 411 P.2d at 630. Second, "a [trust] will be construed in favor of heirs of the [settlor] and an heir will not be considered as disinherited except by express words or necessary implication." *Id*. at 631. These rules were applied in *Baldwin* to reach the conclusion that "[a] remainder limited to a class consisting of

11

children vests in such of the children as are in being at the time the [trust] takes effect, subject to being opened to let in afterborn children." *Id*. at 631; *see also Bunting*, 21 P. at 298-99 ("In case of a gift to a class such as "children" . . . all of the class need not be in existence in order that the remainder may vest in any. The remainder may vest in those who are in existence, subject to open and let in those who afterwards come within the class.").

In *Baldwin*, a will left the testator's estate to the testator's wife, "until such time as she may remarry," at which time any remaining property was "to be divided, one-half to my said wife and the remaining one-half to our children." 411 P.2d at 628-29. If wife did not remarry, the remainder of the estate "not disposed of or used by my said wife [was to] be divided equally between our children share and share alike." *Id*. at 629. Testator was survived by his wife and four children. *Id*. Wife later died without remarrying. *Id*. Before wife died, one of the four children died, leaving a daughter as her sole heir. *Id*. The Kansas Supreme Court rejected the argument "that the words 'our children' should be construed as a class whose members were not determined until the death of the testator's widow [the date distribution to the class was required]." *Id*. at 631. Instead, as noted, *supra*, the Kansas Supreme Court held that a class consisting of children vests in the children in being when a will takes effect, subject to being open for afterborn children, and that there was no requirement expressed in the will that the children survive at the time they would be entitled to take. *Id*. As such, the daughter of the child who predeceased wife was entitled to that child's share. *Id*. at 632. *Baldwin* held that "[i]f there appears to be a doubt or uncertainty as to the [settlor's] intention in

12

using the word 'children' there is a reasonable presumption against disinheritance of a grandchild whose parent is dead." *Id.* at 631 (citations omitted).

Similarly, in *In re Paulson's Estate*, a trust created by a will devised two life estates, and then after the death of both life tenants, directed distribution to "the children born of the bodies of (the life tenants) or either of them, . . . provided however, that in case any of such child or children so born should be dead at the time of the death of the survivor of the said [life tenants], leaving children surviving them, then and in that event such children shall take the share that their deceased parent would have taken if such deceased parent had outlived the said [life tenants]." 363 P.2d 422, 424 (Kan. 1961). The Kansas Supreme Court held that "this kind of a provision following a gift of a remainder to children of a life tenant is not uncommon." *Id*. at 425. The court concluded that the interest in favor of the children born of the bodies of the life tenants or either of them "provided for vested remainders as soon as children were born of [the life tenants] or either of them." *Id*. at 424. Thus, because no condition of survival was expressed, "the remainder to [a] child is vested as to interest in the estate, and [] if the child should die before the death of the life tenant, his title and interest may be divested if he leaves children of his own." *Id*. at 425.

We recognize that in *Baldwin* and *In re Paulson's Estate*, the remainder interest in favor of the class of children was not contingent on any event or occurrence other than the termination of preceding life estates--an event that will certainly occur. The result is no different, however, when a remainder interest is contingent on events that may render the remainder interest less than certain to occur. That is because a condition of survival

13

is not to be implied merely because a future interest is subject to an express condition other than survival. L. Simes & A. Smith, *The Law of Future Interests*, section 594 (3d ed. 2014). To conclude otherwise would be "counter to a large body of authority supporting the devisability and descendability of contingent future interests." *Id*. Two Missouri cases reinforce the application of this accepted principle.

In *Tarpley v. Dill*, 217 S.W.2d 369 (Mo. 1949), a pour-over trust provision in a will created a trust estate "for the benefit of Harry R. Mitchell and Mary R. Mitchell, respectively for life and then to their respective bodily heirs or, if none, to [testator's] son, Joe Tarpley." *Id*. at 370. Very similar to the trust provision at issue in the instant case, "[t]he trust estate [in *Tarpley*] was to terminate upon the death of the survivor of Mary and Harry," after which "testator provided several alternative substitutional future interests." *Id*. at 372. The question posed by the case, identical to the question posed here, was "[w]hat was the effect of Joe surviving testator and predeceasing Mary and Harry upon the devise to him?" *Id*.

The Missouri Supreme Court recognized that Joe's interest, created when the pour-over trust took effect, was "an alternative or substitutional contingent remainder . . . subject to conditions precedent." *Id*. The court also observed however, that "[w]e have held contingent remainders alienable; the effectiveness of an alienation, devise or descent of a given contingent remainder depending on the particular language used in its creation and the intention of the grantor." *Id*. (citations omitted). "The real issue is whether survivorship of the particular estate [that being the life estate of the last to die of Mary

14

and Harry] was a condition precedent of Joe Tarpley's estate." *Id*. at 372-73. The court noted:

> Cases have considered contingent remainders [to be] subject to an implied condition of the donee surviving the particular estate although not so conditioned, seemingly because subject to [some other] condition precedent. This is not logically sound where the contingency refers to the time of enjoyment and possession and not to the time for the title to pass or for the determination of the person taking.

*Id*. at 373. The court thus concluded that the trust terms "did not condition Joe Tarpley's estate upon his surviving the survivor of life beneficiaries." *Id*. Thus, "Joe's estate was conditioned [only] upon Mary's death without heirs of her body prior to Harry's death and Harry's death without heirs of his body." *Id*. As such, "[t]he death of Mary without heirs of her body and the death of Harry without heirs of his body caused the prior testamentary contingent remainders to the 'heirs of the body' of the respective life beneficiaries to fall in and the alternative contingent remainder to Joe to become a vested estate in Joe, if living, and, if not living, in his heirs or assigns." *Id*.

The case of *Theodore Short Trust*, 7 S.W.3d 482, stands in contrast to *Tarpley*, but underscores its principle. In *Theodore Short Trust*, a remainder interest in favor a settlor's "*surviving* brother and sisters" following the death of a beneficiary of a life estate without issue was held to be expressly conditioned on survival. *Id* at 489-90 (emphasis added). Thus "since no sibling was living at [life estate beneficiary's] death without issue, the class of [settlor's] '*surviving* brothers and sisters' . . . closed empty[,] . . . [and the] trust's residuary distributions in favor of [settlor's] 'surviving brothers and sisters' . . . became inoperative, i.e. failed." *Id*. at 491 (emphasis added).

15

Here, the Trust went into effect upon its execution given the immediate commencement of distributions to Settlor of net income for life. *Trautz*, 46 S.W.2d at 139 ("[A]n express trust arises on the effective date of the instrument creating it."). Some members of the class of Settlor's Brothers children came into being after that point, and before the Trust terminated, such that the remainder interest in favor of the children became "vested"[9] subject to open, and descendible by estate or intestacy. *Baldwin*, 411 P.2d at 631. Though the remainder interest in favor of Settlor's Brothers' children remained contingent on other uncertain events (Settlor's Son dying without bodily issue and the death of one or more of Settlor's Brother before the Trust's termination), the uncertain nature of the remainder interest did not permit the implication of a condition of survival, nor effect the descendible nature of the remainder interest.

Settlor is presumed to have known and understood these accepted principles of law when she executed her trust. *Theodore Short Trust*, 7 S.W.3d at 488. We thus conclude that Settlor intended the remainder interest in favor of Settlor's Brothers' children, whether characterized as contingent or vested, to be descendible by estate or intestacy, and not conditioned on survival. *Lehmann v. Janes*, 409 S.W.2d 647, 658 (Mo. 1966) (holding that contingent remainders are alienable).

---

[9]*Baldwin's* characterization of a remainder interest in favor of a class as "vested" once a member of the class comes in to being highlights the confusion often encountered in the case law as courts struggle with whether to characterize a remainder interest as vested or contingent. Plainly, here, the Settlor's Brothers' children's remainder interest was "vested" per *Baldwin* in the sense that members of the class came into being after the Trust took effect. But the remainder interest plainly remained contingent on the occurrence of other uncertain events, suggesting it was a contingent remainder interest. As noted, modern principles of trust construction discount the need to ascribe a label of vested or contingent to remainder interests, ***except*** in the context of the condition of survival. *See Tarpley*, 217 S.W.2d at 372 ("The word 'vested' is used in different senses in the discussions of future interests. Mention has been made of 'a vested contingent' future interest, meaning it was alienable, devisable and descendible.").

16

The Probate Court concluded to the contrary. Though the Judgment acknowledged that a trust interest is presumed descendible absent an "***explicit*** requirement of survival" (emphasis added), the court nonetheless concluded that the Settlor did not intend her deceased Brothers' shares to be distributed beyond the class of Brothers' children. Since none of Settlor's Brothers' children survived to the date the Trust terminated, the Probate Court concluded that the Trust failed. The Probate Court thus implied a condition of survival on the remainder interest in favor of the class of Settlor's Brothers' children even though none was expressed. As we have explained, settled principles of law do not permit such an implication in the absence of evidence that the settlor intended the implication. Moreover, the Probate Court's literal reading of the phrase "children" as limited to the immediate descendants in the first degree of Settlor's Brothers is facially inconsistent with the holdings in *Baldwin*, *In re Paulson's Estate*, and *Tarpley*.

The Probate Court found that Settlor's intent to imply a condition of survival could be gathered from the fact that Settlor used different language to describe the class of those taking through Son ("per stirpes to the lawful bodily issue of Settlor's son") from that used to describe the class of those taking through Settlor's Brothers ("children"). The Probate Court concluded that this difference in language meant that Settlor did not intend distribution any further than her nieces and nephews (Brothers' children) as the class of "bodily issue" includes descendants of unlimited lineage.

Though the Probate Court correctly observed that Settlor used different phrases to describe the remainder interests in favor of the class of Settlor's Son's bodily issue and the

17

class of Settlor's Brothers' children, the Probate Court drew an unfounded legal conclusion from the difference. It is settled that "[t]he mere fact that takers of a postponed gift are described by a class designation such as children . . . does not give rise to any implied condition of survival." L. Simes & A. Smith, *The Law of Future Interests*, section 578 (3d ed. 2014). In fact, it could be argued that if survival was to be implied as a condition at all, it could only have been implied for the class of Settlor's Son's bodily issue. "Where a postponed gift is given to persons described as the 'issue' or 'heirs' of a living person," and it is decided that the description is used in its technical sense, then the words describe a group of persons who cannot be presently ascertained, [and] [t]he gift is therefore contingent, [on survival] because in order to become an 'heir' one must survive his ancestor." L. Simes & A. Smith, *The Law of Future Interests*, section 579 (3d ed. 2014). Because Settlor's Son died without bodily issue, it is unnecessary to determine whether Settlor intended her use of "bodily issue" in the technical sense. Our point, however, is that the difference in Settlor's description of the remainder interest classes, if relevant at all, would only have been relevant to support implication of a condition of survival on Settlor's Son's bodily issue under accepted principles of trust construction.

Moreover, there is another plausible explanation for Settlor's use of different language in describing the remainder interest classes in favor of Son's lawful bodily issue and Brothers' children. At the time the Trust was executed in 1947, the term "children" would generally have been viewed to include adopted children, while the phrase "bodily issue" would not. *See generally*, John Borron, 5 Mo. Prac., Probate Law & Prac., section 359 (3d ed. 2014). It is possible that Settlor intended to limit any who took through her

18

Son to those born of her Son, and that Settlor intended her reference to Brothers' children to include children whether naturally born or adopted.

We are similarly unpersuaded by the Probate Court's reliance on Settlor's will as evidence that Settlor intended to imply a condition of survival on the remainder interest in favor of Settlor's Brothers' children. Settlor's will was executed more than three years after the Trust. The will made provision for Settlor's then husband,[10] and Settlor's Son and his lineal descendants. Though no provision was made in the will for Settlor's Brothers, it appears both may have already died by the time the Will was executed. We see nothing of value that can be gleaned from these facts except to conclude that Settlor intended her Trust assets to benefit her Son's bodily issue, and if none in being, then her Brothers' children, while she intended the property that passed through her will to benefit her husband, Son, and their descendants.

Any doubt about the Settlor's intent is resolved by the fact that the Trust plainly expressed a survival contingency with respect to the life estate in favor of Son and the remainder interest in favor of Brothers, indicating that Settlor's failure to express a survival contingency for the remainder interest in favor or Settlor's Brothers' children was intentional. *In re Paulson's Estate*, 363 P.2d at 424-25 (holding that will which contained survival language with respect to parents but not with respect to their children did not impose a survival requirement on the children because "*testator did not say so, and he easily could have done so*") (emphasis in original); *Lehmann*, 409 S.W.2d at 658

---

[10]The record suggests that husband was not Settlor's Son's father, and that Settlor married husband after executing her Trust.

19

(refusing to imply a condition of survival where testator could have, but did not, express the condition on a contingent remainder interest that recipients be alive on the date of trust termination).

We conclude that the remainder interest in favor of Settlor's Brothers' children was not conditioned on survival. As a result, the interest in favor of Settlor's Brothers' children was descendible by estate or intestacy.

Point One on appeal is granted. Points Two and Three on appeal are rendered moot by our resolution of Point One, and are therefore denied.

## Conclusion

The Probate Court's Judgment is reversed. This matter is remanded for further proceedings to determine the members of the class of Settlor's Brothers' children[11] and to distribute the Trust assets to the members of said class pursuant to the laws of testate or intestate descent as applicable.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

[11]We express no opinion about the membership of the class of Settlor's Brothers' children entitled to distribution of the Trust assets.