

# In the Missouri Court of Appeals
## Western District

KELSEY ALEXANDER,                    )
                      Appellant,    )         WD83907
v.                                   )
                                       )
UMB BANK, N.A. As Trustee, et al.,   )         FILED: July 20, 2021
                Respondents.   )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE MARK A. STYLES, JR., JUDGE

### BEFORE DIVISION FOUR, CYNTHIA L. MARTIN, CHIEF JUDGE, PRESIDING, LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

Kelsey Alexander appeals the probate court's judgment awarding her attorney's fees and expenses from a trust of which she is one of several beneficiaries in four beneficiary lines. She contends the court abused its discretion by not awarding her the full amount of attorney's fees she requested and by denying her request for an award of her travel expenses. For reasons explained herein, we affirm.

In March 1947, Darthea Stodder Harrison ("Darthea") executed a trust agreement to create an irrevocable trust ("DSH Trust"). UMB Bank, N.A., ("UMB") is the trustee. Pursuant to the DSH Trust, Darthea received the trust's net income monthly during her lifetime. Upon her death, the DSH Trust was to provide the income monthly to her only son, William Stodder Harrison, Jr., ("William"), during his lifetime. Upon the death of both Darthea and William, the trust was to terminate and the proceeds were to be distributed to William's bodily issue, if any, and, if none, to Darthea's brothers, R.H. Stodder ("R.H.") and F.G. Stodder ("F.G."). In the event Darthea's brothers were deceased, the trust was to be distributed to R.H.'s and F.G.'s children.

Darthea died in 1964. William died in 2013, without bodily issue. R.H. died in 1950 and had two children, both of whom predeceased William. F.G. died in 1948 and had three children, all of whom also predeceased William. However, R.H. and F.G. had grandchildren who survived William. Alexander is one of F.G.'s grandchildren.

Because the DSH Trust did not expressly state Darthea's intent if all of her brothers' children predeceased the trust's termination, UMB petitioned the probate court for instructions on how to distribute the trust's assets. UMB did not take a position with respect to the proper recipients of the trust assets but did name

---

[1] Portions of the facts are taken from this court's opinion in *Alexander v. UMB Bank, NA*, 497 S.W.3d 323, 324-26 (Mo. App. 2016), without further citation.

F.G.'s and R.H.'s known grandchildren in the petition. The probate court refused to consider UMB's petition after finding that it did not present a justiciable controversy. The probate court concluded that the trust provided only for R.H.'s and F.G.'s children and not their "more remote descendants"; therefore, the probate court believed that the trust failed because there were no designated beneficiaries.

After the probate court refused to consider its petition, UMB filed a petition to reopen Darthea's probate estate in Johnson County, Kansas, to distribute the assets from the DSH Trust through Darthea's estate. The Kansas probate court scheduled a hearing on UMB's petition and authorized delivery of notice to interested persons, which included Alexander. Alexander objected to the petition and moved to stay the Kansas proceeding to allow the Missouri probate court to entertain a suit she filed concerning distribution of assets from the DSH Trust. The Kansas probate court stayed its proceedings.

Alexander's petition in the Missouri probate court sought to terminate the DSH Trust and distribute the assets per its terms or, alternatively, to modify the trust. Alexander alleged that the remainder interest held by R.H.'s and F.G.'s children passed through their respective estates upon their death and, therefore, the heirs and devisees of R.H. and F.G. have a direct, vested property interest in the DSH Trust estate. Alexander asserted that the DSH Trust did not fail and that its assets should be distributed to the heirs and devisees of R.H.'s and F.G.'s children.

3

At Alexander's request, summonses were issued and service was had on each of the individuals identified as descendants of R.H. and F.G. The identified descendants did not oppose Alexander's petition. UMB requested only that the court enter a judgment consistent with the terms of the DSH Trust and Darthea's intent and expressed no position about Alexander's proposed construction of the trust.

On January 14, 2016, the probate court entered a judgment denying Alexander's petition. The court found that the DSH Trust terminated by its terms upon William's death in 2013. The court further found that Alexander's request for an order construing the trust to provide for the distribution of the trust assets to R.H.'s and F.G.'s descendants was inconsistent with the court's understanding of Darthea's intent. Alexander appealed to this court.

On appeal, we reversed the probate court's judgment in *Alexander v. UMB Bank, NA*, 497 S.W.3d 323 (Mo. App. 2016). We concluded "that the remainder interest in favor of" R.H.'s and F.G.'s children "was not conditioned on survival"; therefore, the interest in favor of their children "was descendible by estate or intestacy." *Id*. at 334. We remanded the case to the probate court for further proceedings to determine the members of the class of R.H.'s and F.G.'s children and "to distribute the Trust assets to the members of said class pursuant to the laws of testate or intestate descent as applicable." *Id*.

On remand, UMB moved to dismiss the Kansas petition to reopen Darthea's estate, and the Kansas probate court granted the motion. In the Missouri

4

proceedings, Alexander's counsel and UMB's counsel worked together to identify the beneficiaries of the DSH Trust consistent with this court's opinion in the appeal.

Alexander then submitted to the probate commissioner a 15-page proposed consent judgment, which she also circulated to UMB. Alexander's consent judgment proposed distributions to beneficiaries in four lines, specifically, through two children of R.H. and two children of F.G.[2] One of these lines was through F.G.'s daughter, Anne Stodder McEwen ("Anne"), who was Alexander's mother. Alexander proposed that Anne's one-quarter share of the DSH Trust be distributed to Anne's trust ("ASM Trust"). In response to Alexander's proposed consent judgment, UMB raised concerns about whether Anne's pour-over will had been probated and suggested that distribution of her share of the DSH Trust to Anne's estate, instead of to the ASM Trust, might be necessary. If Anne's share of the DSH Trust were distributed to Anne's estate, and it was determined that Anne's will was not effective because it had never been probated, Anne's share would pass to Alexander and her brother in equal shares as Anne's only surviving children and heirs at law. If, however, Anne's share of the DSH Trust were distributed directly to ASM's Trust, of which Alexander was trustee, Alexander would receive a two-thirds share, while her brother would receive only a one-third share. The takers and the proportions of the remaining three lines besides Anne's were clear, as R.H.'s and F.G.'s other children all had wills that had been probated.

---

[2] F.G. had three children, but one of his children died at the age of three.

5

At a status conference in April 2017, the probate commissioner instructed UMB and Alexander to continue their efforts to arrive at a judgment, including by seeking consent of the beneficiaries if possible. Alexander, however, decided to hire an attorney in Arkansas to locate and secure the affidavit of the retired Arkansas attorney who had drafted Anne's estate planning documents. Anne's retired attorney affied that Anne had transferred all of her estate assets, including any assets potentially subject to probate, to the ASM Trust. Alexander gave the affidavit to UMB, but UMB prepared a proposed consent judgment that provided for the distribution to Anne's line by intestacy rather than to the ASM Trust.

Alexander then filed a petition for distribution of the DSH Trust assets. In its answer to the petition, UMB again expressed its hesitation to agree to distribute Anne's share to the ASM Trust because Anne's will was never probated. Also, UMB noted that the ASM Trust stated, with regard to the trust's assets, that Anne had delivered to the trustee "the properties described in Schedule A annexed hereto," but that Schedule A referenced only categories of documents and was written in a way to suggest that further itemization of the documents was required or anticipated. Alexander's petition for distribution did not allege that Anne had any knowledge about the DSH Trust at any time. In its answer, UMB requested a judgment consistent with the terms of the DSH Trust agreement, Darthea's intent, and our opinion in *Alexander*, 497 S.W.3d 323. Alexander filed a reply in support of her petition for distribution of the DSH Trust assets. Alexander attached as an exhibit to her reply a redline version of UMB's proposed consent judgment on

6

which she made "corrections," which included proposed findings consisting of statements from Anne's retired Arkansas attorney regarding Anne's intent to transfer all of her probate assets, and any assets potentially subject to probate, to the ASM Trust during her lifetime. Additionally, Alexander corrected UMB's misidentification of the trustee of a beneficiary in another line.

In January 2018, the probate commissioner held a status conference during which he ordered Alexander to serve her petition for distribution on all respondents and potentially interested persons. UMB subsequently sent a letter to the probate commissioner with an updated family tree of interested parties. Alexander obtained service of process throughout the country on 11 interested parties and a waiver of service from UMB. No respondent or interested party, with the exception of UMB, filed an answer or objection to her petition for distribution. In June 2018, Alexander filed a motion for default judgment.

The probate commissioner held a hearing on Alexander's motion for default judgment and her petition for distribution of assets in July 2018. The day before the hearing, Alexander and UMB filed a stipulation to the admissibility of 24 exhibits to inform the commissioner of the identities and rights of the four lines of the DSH Trust remainder beneficiaries. One of the stipulated exhibits was a trust distribution agreement between Alexander, her brother, and her niece, who is a remainder beneficiary of the ASM Trust, agreeing that Anne's share of the DSH Trust should be distributed to the ASM Trust.

There was no testimony or argument at the hearing. At the conclusion of the uncontested hearing, the commissioner took the case under advisement. While the case was under advisement, Alexander submitted two different proposed judgments, one that contained UMB's edits to which she agreed and another that contained additional edits to which she did not agree. There were also discussions between the parties and the commissioner about whether UMB would be required to submit a final accounting. Because multiple beneficiaries, including Alexander, would not sign a release relating to the administration of the trust, UMB filed a motion for approval of its final accounting. The probate commissioner held a case management conference in May 2019 and requested a clean proposed order of distribution, which Alexander submitted.

In August 2019, the probate commissioner entered the order of distribution, ordering that the DSH Trust balance, less fees, costs, and expenses relating to UMB's administration of the DSH Trust and attorney's fees and expenses approved by the court for reimbursement to Alexander, be distributed in four equal shares to the four lines of the DSH Trust remainder beneficiaries. With respect to Anne's share, the probate commissioner discussed Anne's retired attorney's affidavit and stated:

> Based in part on [Anne's retired attorney's] statements, Alexander contends that because [Anne] held the remainder interest in the DSH Trust prior to the time she formulated, executed, and transferred her assets to the ASM Trust, her remainder interest was transferred to the ASM Trust along with all of her other assets. The Court finds that such argument is consistent with her stated intention

8

to transfer all of her existing assets to the ASM Trust and, as a result, avoid probate.

The commissioner further stated:

> Separately, the heirs at law for [Anne] each signed a Trust Distribution Agreement providing that the remainder interest held by [Anne] in the DSH Trust should be distributed to the ASM Trust. Pursuant to this Agreement, this Court finds that the interest held by [Anne] should be distributed to the ASM Trust.

Following the entry of the order of distribution, UMB filed a motion requesting approval of the final trust accounting. Exhibits attached to the motion showed that UMB had paid its counsel approximately $63,000.00 in fees from the DSH Trust from June 2014 through July 2019 and that, as of August 9, 2019, the DSH Trust had a cash balance of $449,043.08.

Alexander subsequently filed her motion for reimbursement of attorney's fees and expenses, requesting reimbursement of over $235,000.00 in attorney's fees and expenses from the DSH Trust. Because Alexander was seeking approximately four times the amount of attorney's fees and expenses that UMB incurred over the same time period, UMB requested that the probate commissioner review in camera Alexander's counsel's invoices for reasonableness and determine if any amount awarded should be paid from Anne's share alone instead of from the entire DSH Trust.

After reviewing in camera the invoices from Alexander's counsel and hearing arguments from counsel, the commissioner entered his judgment awarding

9

Alexander some, but not all, of the attorney's fees and expenses she was seeking.[3] In his judgment, the commissioner found that the invoices Alexander submitted for in camera review itemized attorney's fees of $237,323.00 for legal services rendered by her Kansas City attorneys; $3,652.71 for legal services rendered by her Arkansas attorney; $8,542.15 in expenses incurred by her Kansas City attorneys; and $3,348.59 in expenses she incurred to travel from her home in Colorado to attend court hearings and meet with her Kansas City attorneys, for a total of $252,866.45 in requested attorney's fees and expenses. The commissioner noted that this amount constituted 56% of the DSH Trust's total assets of $449,043.08. The commissioner found that it would be "patently unreasonable and inequitable" to award Alexander 56% of the trust assets.

The commissioner then examined the reasons the fees and expenses were incurred. The commissioner found that the attorney's fees that Alexander incurred through the successful completion of the first appeal in *Alexander*, 497 S.W.3d 323, which totaled $91,416.00, were reasonably and necessarily incurred and were of benefit to all of the DSH Trust beneficiaries. Therefore, the commissioner ordered that the DSH Trust reimburse Alexander for all of those fees.

The commissioner next noted that Alexander incurred the remaining attorney's fees of $149,559.71 "after successful completion of the appeal in uncontested litigation." The commissioner found that $34,504.00 of this amount was for legal services rendered to Alexander in the preparation and prosecution of

---

[3] The probate commissioner also entered a separate judgment approving UMB's final accounting.

10

her request for reimbursement of attorney's fees and expenses that was presently before him. Because those fees did not benefit the DSH Trust but were incurred by Alexander for her personal benefit, the commissioner found that justice and equity required that those fees be borne by Alexander and not the DSH Trust.

After reducing the post-appeal attorney's fees of $149,559.71 by $34,504.00, the commissioner concluded that the remaining amount, $115,055.71, was "excessive." Based upon his review of the itemized billing statements and the fact that the post-appeal proceedings were uncontested, the commissioner found that the sum of $40,000.00 was a just and equitable portion of Alexander's post-appeal attorney's fees to be borne by the DSH Trust. The commissioner also found that the expenses of $8,542.15, incurred by Alexander's Kansas City attorneys, were necessarily incurred and of benefit to the DSH Trust; consequently, the commissioner found that all of those expenses should be borne by the DSH Trust.

With respect to the $3,652.71 in attorney's fees Alexander incurred from her Arkansas counsel, the commissioner found that Alexander incurred those fees in securing Anne's one-quarter share of the DSH Trust, in which Alexander was interested, to the ASM Trust, of which Alexander was the trustee. The commissioner found that those fees benefited Alexander, were of no benefit to the beneficiaries of the remaining three equal shares of the DSH Trust, and should be borne by her.

11

Lastly, with regard to Alexander's request for reimbursement of $3,348.59 in travel expenses, the commissioner found that Alexander did not testify at any hearing she attended and that her travel to Kansas City was not necessary to her prosecution of this case. Because the expenses were incurred for Alexander's personal benefit and did not benefit the DSH Trust, the commissioner concluded that justice and equity required that they be borne by Alexander and not the DSH Trust.

Thus, the probate commissioner awarded Alexander $91,416.00 for her attorney's fees incurred through the completion of the first appeal, $40,000.00 for her post-appeal attorney's fees, and $8,542.15 in costs and expenses incurred by her Kansas City attorneys, for a total of $139,958.15, from the DSH Trust.

Alexander filed a motion for rehearing. After hearing arguments and extensively reviewing Alexander's rehearing motion and the underlying file, the probate court denied Alexander's motion and confirmed the probate commissioner's judgment awarding attorney's fees and costs. Alexander appeals.

## ANALYSIS

Alexander's five points on appeal challenge the probate court's decision not to award her the full amount of attorney's fees she requested or any of her travel expenses. Section 456.10-1004 of the Missouri Uniform Trust Code[4] provides that, "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including

---

[4] All statutory references are to the Revised Statutes of Missouri 2016.

reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." This statute is discretionary; hence, while it grants the circuit court the authority to award attorney's fees, it does not mandate an award. *Lehman v. Bank of Am.*, *N.A.*, 427 S.W.3d 315, 324 (Mo. App. 2014). The probate court, which tried the case and, therefore, was "acquainted with all the issues involved," "is considered an expert on the question of attorney fees." *Green v. Plaza in Clayton Condo. Ass'n*, 410 S.W.3d 272, 279 (Mo. App. 2013) (citation omitted).

We review the award of attorney's fees in a trust action for an abuse of discretion. *Rouner v. Wise*, 446 S.W.3d 242, 259 (Mo. banc 2014). An abuse of discretion occurs when the "decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lehman*, 427 S.W.3d at 319 (citation omitted).

In Point I, Alexander contends that the probate court abused its discretion by considering the value of the DSH Trust in determining its award of attorney's fees and expenses. Specifically, she takes issue with the court's finding that awarding her the full $252,866.45, or 56% of the trust's total assets, that she requested would be "patently unreasonable and inequitable." She argues that, instead of considering the size of the trust assets, the court should have considered, "the nature and importance of the subject matter," quoting *DeWalt v. Davidson Surface Air*, 449 S.W.3d 401, 406 (Mo. App. 2014). Alexander's reliance on *DeWalt* is misplaced. *DeWalt* involved a request for attorney's fees incurred in successfully

13

asserting a Missouri Human Rights Act ("MHRA") claim. *Id*. at 404. Courts are to consider several factors in making an attorney's fee award in MHRA cases, including "the nature and importance of the subject matter," and are not permitted "to reduce fees when the damages are small in order to maintain some proportionality between the damages and the fees awarded." *Id*. These principles, which are intended to remind courts "that even small verdicts in MHRA cases *may* still reflect a high degree of success when properly considered in light of the nature and importance of the subject matter in the particular case," *id*. at 406, have no relevancy whatsoever to a probate court's determination of the amount of reasonable attorney's fees that justice and equity require be awarded to a trust beneficiary from the trust's assets. That the court compared the amount of fees and expenses that Alexander was requesting to the total value of the DSH Trust was entirely appropriate and was not against the logic of the circumstances or so arbitrary and unreasonable as to shock our sense of justice.

Alexander next argues that, in making its award, the probate court failed to follow the "common fund" doctrine, which permits a litigant to recover attorney's fees where the litigant recovers "a common fund that benefited a trust with multiple beneficiaries." *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 285 (Mo. banc 2019). She asserts that the court's failure to follow this doctrine resulted in her doing "all of the work" but receiving a negative net distribution, while the other three beneficiary lines enjoyed a "windfall" from her efforts.

14

The judgment clearly shows, however, that the court did apply the common fund doctrine in making its award of attorney's fees and expenses. The probate court reviewed the invoices from Alexander's attorneys and expressly ordered that Alexander be reimbursed for all of the legal services and expenses that benefited the DSH Trust, *i.e.*, the common fund. That the award did not compensate her for all of the attorney's fees and expenses she incurred was not the result of the court's failure to apply the common fund doctrine; rather, it was the result of the court's finding that the remaining fees and expenses Alexander incurred were either for work done solely for her benefit or were excessive and, therefore, justice and equity did not require that she be reimbursed for such fees and expenses. Point I is denied.

In Points II through V, Alexander challenges the court's findings that the attorney's fees and travel expenses that the court did not award her were incurred for work done solely for her benefit or were excessive. She contends that all of her attorney's fees and her travel expenses were necessary to the resolution of this litigation, which she argues was "contested," and that all of her fees and travel expenses were for work that benefited the entire trust.

Alexander's characterization of the case as "contested" is not supported by the record. The probate commissioner, who took over the case after the first appeal and, therefore, was aware of the nature of the issues in the case, stated multiple times in the judgment that the post-appeal proceedings were uncontested. Indeed, the record shows coordination between UMB's counsel and Alexander's

15

counsel in several respects, including in the identification of beneficiaries to the DSH Trust and in the drafting of the proposed distribution order. The only issue regarding Alexander's proposed distribution of the DSH Trust to which UMB did not immediately acquiesce was her assertion that Anne's share be distributed through the ASM Trust, which would have given her a two-thirds share and her brother a one-third share, instead of through Anne's estate, which would have given her and her brother equal shares. Because UMB had concerns about Anne's will and the ASM Trust, which Alexander does not demonstrate were raised in bad faith, and distribution of Anne's share through the ASM Trust would have personally benefited Alexander to the detriment of her brother, another beneficiary to whom UMB owed the same fiduciary duties, UMB's "refusal to concede," as Alexander characterizes it, was entirely appropriate.

In any event, this issue could have been resolved – and, in fact, the probate commissioner suggested that it be resolved – by seeking the consent of the other beneficiaries. Instead of simply obtaining an agreement from her brother and her niece concerning distribution of Anne's share, Alexander also decided to hire Arkansas counsel to obtain an affidavit regarding Anne's intent from the attorney who drafted Anne's estate documents. The probate commissioner's order of distribution clearly indicates that the agreement alone would have been sufficient, as he stated that he was distributing Anne's share to the ASM Trust "[p]ursuant to" the agreement between Alexander, her brother, and her niece. Under these circumstances, the probate court did not abuse its discretion in finding that the

16

fees that Alexander expended for her Arkansas counsel to obtain the affidavit benefited only her and were of no benefit to the beneficiaries of the remaining three shares of the DSH Trust.

Additionally, the probate court did not abuse its discretion in denying Alexander's request for $34,504.00 in attorney's fees that she incurred for the preparation and prosecution of her request for reimbursement of attorney's fees and expenses. To support her claim that she was entitled to reimbursement for such fees, she again mistakenly relies on *DeWalt*, a case involving attorney's fees awards in MHRA cases. Citing federal civil rights cases, *DeWalt* held that "[r]easonable time spent preparing fee applications is generally compensable[,] . . . otherwise petitioning for the fee would automatically diminish the fee eventually received." 449 S.W.3d at 406-07. As noted *supra*, however, an award of attorney's fees to a successful plaintiff in an MHRA case – and in a federal civil rights case – involves different considerations than an award of attorney's fees to a trust beneficiary from the trust's assets, where the sole consideration is that reasonable fees be awarded as justice and equity may require. § 456.10-1004. The court's decision that justice and equity did not require her to be reimbursed for an additional $34,504.00 in attorney's fees incurred *solely* for the preparation and prosecution of her motion for reimbursement of attorney's fees and expenses was not against the logic of the circumstances or so arbitrary and unreasonable as to shock our sense of justice.

Lastly, Alexander contends the probate court abused its discretion in denying her request for reimbursement of her travel expenses. She argues that she should be reimbursed for "at least" $2,525.81 of her $3,348.59 in travel expenses, because that is the amount of expenses associated with her attendance at the hearing on her petition for distribution of assets and motion for default judgment and the hearing on her motion for reimbursement of attorney's fees and costs.

The probate commissioner, who presided over both of these hearings, stated in his judgment that Alexander did not testify at either hearing and that her presence was not necessary to the prosecution of this action. Alexander insists that "prudence dictated she attend" the hearings to testify if necessary and that the travel expenses she incurred to attend these hearings were "reasonably incurred for the prosecution of her lawsuit, which benefited *all* beneficiaries." These conclusory, unsupported arguments are insufficient to demonstrate that the probate court's decision to deny Alexander's request for reimbursement of her travel expenses was against the logic of the circumstances or was so arbitrary and unreasonable as to shock our sense of justice. Points II through V are denied.

In summary, merely incurring a certain amount of attorney's fees and expenses does not entitle a trust beneficiary to an award of that amount. Rather, the probate court may award only those attorney's fees and expenses that are reasonable and that justice and equity require. In arriving at that amount, the probate court must consider all of the circumstances. Here, the circumstances included the fact that the DSH Trust had a cash value of $449,043.08. No doubt

aware of the approximate value of the trust and the expected number of beneficiaries, Alexander and her counsel nevertheless chose to accumulate $252,866.45 in attorney's fees and expenses in an uncontested case that did not involve discovery or multi-day trials, had minimal briefing after the first appeal, and, although the case was pending was for several years, had periods in which little to no activity occurred. The probate commissioner, who was very familiar with every aspect of the case, thoroughly reviewed the invoices from Alexander's attorneys and, applying the common fund rule, determined which fees benefited the DSH Trust and how much of those fees were reasonable. The probate commissioner's determination, confirmed by the probate court, that justice and equity required that Alexander be reimbursed $139,958.15 in attorney's fees and expenses from the DSH Trust, and not the full $252,866.45 she was seeking, was not against the logic of the circumstances and was not so arbitrary or unreasonable as to shock our sense of justice.

## CONCLUSION

The probate court's judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

19